Marshall and wife, Appellants, v. City of Green Bay, Respondent.

*November 29, 1962—January 8, 1963.*

For the appellants there was a brief and oral argument by *Robert P. Stebbins* of Green Bay.

For the respondent there was a brief by *Welsh, Trowbridge, Bills, Planert & Gould* of Green Bay, and oral argument by *Frederick N. Trowbridge.*

HALLOWS, J. The plaintiffs advance four grounds why the complaint states a cause of action: (1) They were as diligent in pursuing their claims and in challenging governmental immunity as were the plaintiffs in *Holytz v. Milwaukee, supra,* and should receive equal treatment, (2) the reason for the prospective application of the abolition of governmental immunity does not apply because the defendant has liability insurance, (3) the maintenance and operation of the toboggan hill outside of the corporate limits of the city was a proprietary function and independent of the *Holytz Case* the city is liable for negligence, and (4) the defendant has waived its immunity by the purchase of insurance to the extent of the policy limits and is estopped from asserting the defense of governmental immunity. The defendant argues since the decision in the *Holytz Case* is to be applied prospectively only as of July 15, 1962, it has no application to the instant case and the law of this state at the time of the alleged accident forecloses recovery.

In abolishing governmental immunity for torts, we advisedly made the new rule prospective only and postponed the effective date for a short period of time after the date of the decision. We did make an exception to the prospective effect of the new rule by making it applicable to the case in which it was announced. The same judicial method or technique of making a prospective ruling applicable to the case at bar was used when this court abolished charitable-hospital immunity. *Kojis v. Doctors Hospital* (1961), 12 Wis. (2d) 367, 107 N. W. (2d) 131. Applying a prospective new rule of law to the case in which it was announced was justified in both instances on pragmatic grounds in the normal judicial process of adjudication. It is true the plaintiffs in this case raised the issue of governmental immunity and were diligent in pursuing their claims prior to the decision in *Holytz,* and on similar grounds we have allowed recovery in instances where this court has overruled a previous doctrine and has limited its

retroactive application. *Olson v. Augsberger,* ante, p. 197, 118 N. W. (2d) 194. Consistent with the Blackstonian theory of jurisprudence that an appellate court declares the law which it discovers and later decisions which seem to change the law do not do so but only declare the true rule which always was the law, there is some merit in claiming any judicial change in the law must necessarily be retroactive.

The plaintiffs admit when a case is overruled a line must be drawn somewhere and no matter where it is drawn some hardships are inevitable. In abolishing governmental immunity and making the new rule effective prospectively only, this court was conscious it was not announcing the law as it had been or that the prior cases were erroneous. The same view was taken by this court in the *Kojis Case, Bielski v. Schulze* (1962), 16 Wis. (2d) 1, 114 N. W. (2d) 105, and *McConville v. State Farm Mut. Automobile Ins. Co.* (1962), 15 Wis. (2d) 374, 113 N. W. (2d) 14. In making those rules as it did, this court not only decided the cases but laid down rules of law for future guidance. It has been commented that in doing so this court made judicial law and so it did. Because of the nature of the governmental-immunity rule, we are not inclined to give retrospective application to the new rule. On the problem of prospective overruling, see Levy, Realist Jurisprudence and Prospective Overruling, 109 University of Pennsylvania Law Review (1960), 1; The Legal Process, p. 172.[1]

The next question is whether the operation by a municipality of a toboggan hill outside of its corporate limits is a governmental or a proprietary function. The appellant contends a municipality cannot perform a governmental function outside of its corporate limits and necessarily the maintenance and operation of the toboggan hill was proprietary. The identical issue was considered and resolved adversely to the

---

[1] By Auerbach, Garrison, Hurst, and Mermin.

plaintiffs in *Cegelski v. Green Bay* (1939), 231 Wis. 89, 285 N. W. 343. We are not inclined to overrule that case.

The final issue is whether the defendant waived its immunity by contracting for liability insurance covering the acts complained of and providing the insurer would not raise the defense of governmental immunity. We approach this problem as we would if the *Holytz Case* had not been decided.

In *Pohland v. Sheboygan* (1947), 251 Wis. 20, 27 N. W. (2d) 736, a toboggan-slide case, the court held among other things a city had no power to make an indemnity contract unless necessary for its protection and construed a general indemnity contract as extending only to liability which was beyond the reach of the immunity. This was the first case to decide the question of waiver against contentions of the plaintiff. We must overrule *Pohland* on this point. The power of a city to waive its tort immunity need not rest upon an express grant of statutory authority. The immunity granted municipalities from tort liability was created by case law basically and primarily to protect public funds and property. Such immunity can be waived by the municipality when it has secured that purpose by insurance and believes a waiver to be advantageous or desirable. We find no merit so far as tort liability is concerned in the doctrine that "the king can do no wrong" and therefore a municipality by waiving its immunity gives up part of its sovereignty.

An incorporated city has sufficient autonomy that inherent in and incidental to the city's power to operate and maintain a toboggan slide outside of its corporate limits for public recreation, although such activity has been considered a governmental function, is the power to compensate members of the public who are injured in the use of such facilities through its negligence and that of its servants. This is but recognizing a humanitarian duty to the public as part of the city's welfare functions and power. If, as stated in *Pohland,* such insurance may be justified to protect the city against the expense of

defending baseless actions, there is as much reason to use public funds to pay premiums for insurance to protect the city from liability which it recognizes ought to exist.

In the case at bar, it is apparent the city intended to step down from its pedestal of immunity. The policy of insurance was a contract between the city and the insurer. Its terms as alleged in the complaint provided the insurer would defend any action for damages against the city based on negligence and no action could be brought against the insurer unless as a condition precedent the amount of the city's obligation to pay was determined by judgment against the city after trial or by a written agreement between the city, the claimant, and the insurer. The policy also provided the insurer would not raise the defense of governmental immunity. This important provision of the liability policy is commonly understood to mean the insurer, who is in control of the defense, will not raise such defense on behalf of the insured against the claimant. The provision has no application to an action between the city and the insurer as a question of governmental immunity would not arise in such action. It applies rather to a claim or action by a claimant against the city, the defense or settlement of which the insurer controls. By the terms of the policy the city and the insurer agreed in effect to extend the coverage of the policy and to enlarge the scope of its insuring clause which a literal construction would otherwise limit to liability incurred beyond the city's immunity. True, this liability policy is a private contract between the parties and normally would not concern third parties. Yet in this instance the provision is in fact for the benefit of the claimants and the city—certainly not for the insurer. What else can the agreement not to raise the defense of governmental immunity mean? We construe this agreement to be a waiver of governmental immunity by the city recognized and agreed to by the insurer. Such immunity cannot be resuscitated by subsequent action of the city or the insurer, or both. Under such circumstances to

allow the city to insist on its immunity by a defense controlled by the insurer would be a virtual fraud and a misuse of public funds. We need not place the result on the ground of estoppel as we hold solely the defendant waived its immunity for such of its acts and those of its servants as are covered by the insurance policy *pro tanto* to the extent of the policy limits. We do not hold, however, a municipality waives its immunity when it takes out a liability policy which does not contain the condition or agreement to refrain from raising the defense of governmental immunity.

The decisions of other jurisdictions on this question are in conflict. The older cases and the majority view hold the purchase of liability insurance does not constitute a waiver of governmental immunity. A growing minority of jurisdictions take a more-realistic view of the problem and hold that governmental immunity is waived or removed to the extent that an insurance policy protects a municipality against tort liability which theretofore did not exist. See Anno. 68 A. L. R. (2d) 1437, Municipal Immunity—Insurance. Since the *Pohland Case* was decided the following states have expressed the minority view: *Kingsport v. Lane* (1951), 35 Tenn. App. 183, 243 S. W. (2d) 289; *Knoxville, Tenn. v. Bailey* (6th Cir. 1955), 222 Fed. (2d) 520; *Christie v. University Regents* (1961), 364 Mich. 202, 111 N. W. (2d) 30; *Thomas v. Broadlands Community Consolidated School Dist.* (1952), 348 Ill. App. 567, 109 N. E. (2d) 636; *Lynwood v. Decatur Park Dist.* (1960), 26 Ill. App. (2d) 431, 168 N. E. (2d) 185.

*By the Court.*—Order reversed.

Gordon, J. (*dissenting*). Our disenchantment with the doctrine of governmental immunity should not, in my opinion, take the form of finding a waiver of such immunity on the part of a municipality because the latter has contracted for a certain type of liability insurance.

I recognize that a municipality can waive its immunity as to tort liability; the question is whether Green Bay has voluntarily done so by purchasing a contract of liability insurance which provides that the insurer will not raise the defense of governmental immunity.

A few jurisdictions have taken the view that the purchase of insurance waives the immunity. Four states referred to in the majority opinion have so held. However, 20 states have held to the contrary, with 12 of such states expressing such view within the past fifteen years. See Anno. 68 A. L. R. (2d) 1439.

A city is authorized by law (sec. 66.18, Stats.) to procure liability insurance. The fact that the city of Green Bay purchased liability insurance and the fact that the policy barred the insurer from raising the defense of governmental immunity do not, in my opinion, warrant a conclusion that the city thereby has intentionally waived an existing defense or unintentionally estopped itself from asserting it.

In a proper case, the city might have chosen to waive its immunity as a municipality performing a governmental function and, in such event, its insurance coverage would be operative. The fact, however, that it reserved the power to do this should not be converted into a requirement that it do so. In my opinion, the majority decision unwisely translates the protection of insurance to the creation of liability.

One purchases liability insurance to protect himself in the event he is found to be responsible; the ruling of the majority means that one not otherwise liable is now responsible *because* he has purchased insurance.

The plaintiffs were unable to bring a direct action against the insurance company in the case at bar. Nevertheless, the majority opinion has interpreted the insurance contract as a third-party-beneficiary agreement which operates in favor of injured claimants. I find it difficult to believe that the city

of Green Bay took out liability insurance in order to *create* liability in favor of third parties.

The majority opinion advances the view that it would be "a virtual fraud and a misuse of public funds" for a city to insist on its immunity under these circumstances. We abrogated tort immunity prospectively in *Holytz v. Milwaukee* (1962), 17 Wis. (2d) 26, 115 N. W. (2d) 618; before that decision, no municipality was able to predict what this court would do in connection with that subject. The doctrine had been terminated in a large number of states so that Wisconsin municipalities were justifiably concerned with what might happen in this state; certainly the doctrine was under strenuous siege. A municipality could not know in advance of the *Holytz Case* whether there would be abrogation and, if so, whether it would be prospective or retroactive. It was a reasonable precaution for cities to take out insurance lest municipal immunity be terminated with retroactive effect. I fail to see how the purchase of insurance under these circumstances could constitute the misuse of public funds.

I am authorized to state that Mr. Chief Justice BROWN joins in this dissent.