WOJTANOWSKI, by Guardian *ad litem,* and others, Appellants, v. ST. JOSAPHAT'S CONGREGATION and others, Respondents.

*January 11—January 31, 1967.*

For the appellants there was a brief by *Krawczyk & Duginski* of Milwaukee, and oral argument by *Michael J. Duginski.*

For the respondent there was a brief by *Kluwin, Dunphy, Hankin & Hayes* and *Michael J. Pfau* of counsel, all of Milwaukee, and oral argument by *John A. Kluwin.*

GORDON, J.   Susan Wojtanowski, like the plaintiff in *Niedfelt v. Joint School Dist.* (1964), 23 Wis. (2d) 641, 127 N. W. (2d) 800, seeks to recover for an injury sustained prior to the date established by this court for the termination of a preexisting immunity. In *Niedfelt* the action was against a school district, and the accident occurred before the date established for the prospective abrogation of governmental immunity in *Holytz v. Milwaukee* (1962), 17 Wis. (2d) 26, 115 N. W. (2d) 618. As in the case at bar, Clair Niedfelt urged that justice required a right of recovery even though the injury preceded the crucial date designated by the court. We rejected that argument, stating, at page 644:

"[W]e do not believe that the change proposed by the appellants herein would be a desirable one. In deciding the *Holytz Case,* we fully recognized that in abolishing governmental immunity prospectively we would necessarily exclude a number of claims which would arise before July 15, 1962. We adhere to that determination."

In *Widell v. Holy Trinity Catholic Church* (1963), 19 Wis. (2d) 648, 121 N. W. (2d) 249, we abolished immunity of religious institutions prospectively as of July 1, 1963, and stated, at page 657: "Causes of action arising prior to that date will be governed by the old rule of immunity." Miss Wojtanowski advances no reasons which were not contemplated when we made the application of the *Widell Case* prospective. We decline to alter that carefully considered prior ruling.

The appellants also urge that they should be permitted to proceed with their lawsuit because the defendant church carried a policy of insurance to cover its responsibility for damages arising out of negligence. While the policy is not included in the record, it is not alleged that the policy contains a provision regarding the defense of religious immunity. In this respect the case is different from *Marshall v. Green Bay* (1963), 18 Wis. (2d) 496, 118 N. W. (2d) 715, where this court held that a municipality which took out liability insurance was deemed to have waived its defense of governmental immunity because the policy contained an express provision barring the insurer from raising the defense of governmental immunity.

The appellants would have us broaden the rule of *Marshall v. Green Bay* to include a situation in which the defendant has taken out a policy of liability insurance even though the policy does not contain a waiver of immunity. Our answer to that proposal was given in the *Niedfelt Case,* cited above. In upholding an order which sustained demurrers to the complaint, the court said in the *Niedfelt Case,* at page 645:

"With reference to a municipality that had taken out liability insurance containing an express agreement which barred the insurer from raising the defense of governmental immunity, this court held in *Marshall v. Green Bay* (1963), 18 Wis. (2d) 496, 118 N. W. (2d) 715, that the defense of governmental immunity was waived. In the instant case, the amended complaint included an allegation that the defendant carried a comprehensive liability insurance policy, but there is no allegation that the policy required the carrier to forgo the defense of governmental immunity.

"The mere presence of liability insurance does not constitute a waiver of the defense of governmental immunity, as the *Marshall Case,* at page 502, clearly asserted. We conclude that an extension of the holding in the *Marshall Case,* as urged by the appellants, would be unwise."

Another argument which is advanced by the appellants is that recovery should be permissible because of the high degree of negligence involved in this case. It is true that a religious corporation is not exempt from the provisions of the safe-place statute. *Hintz v. Zion Evangelical United Brethren Church* (1961), 13 Wis. (2d) 439, 109 N. W. (2d) 61; *Harnett v. St. Mary's Congregation* (1956), 271 Wis. 603, 74 N. W. (2d) 382. Similarly, a religious corporation may be liable in nuisance. *Smith v. Congregation of St. Rose* (1953), 265 Wis. 393, 61 N. W. (2d) 896. Without alleging a nuisance or a violation of the safe-place statute, the appellants in the case at bar are attempting to penetrate the pre-*Widell* immunity because of the degree of negligence involved.

We do not believe that the degree of negligence is relevant to the question of the applicability of religious immunity. While the complaint would appear to allege only ordinary negligence, it is our conclusion that it would be immaterial if it purported to allege negligence in terms of a high degree. In either event, the religious institution was entitled to immunity from such negli-

gence until the effective date of the rule in the *Widell Case*.

A final argument advanced by the appellants is that the furnishing of votive candles to worshippers and the acceptance of contributions therefor constituted a commercial or nonreligious activity to which the immunity does not apply. It is arguable that a religious institution which engages in commercial activities may thereby forsake immunity as to those activities. For example, the Ohio supreme court has imposed liability upon a religious institution for an injury arising out of bingo games operated for substantial profits. In *Blankenship v. Alter* (1960), 171 Ohio St. 65, 66, 67, 167 N. E. (2d) 922, the court said:

> "Immunity from civil liability for negligence accorded to charitable institutions, including religious organizations, depends upon the actual devotion of the institution to charitable purposes, and a charitable institution is liable for negligence in the operation of a business enterprise for profit not directly related to the purpose for which such institution was organized.
>
> ". . .
>
> ". . . by conducting the game of bingo as a large scale money-making proposition, the church stepped out of its ordinary and accepted sphere and thereby lost the immunity from tort liability it might have asserted in different circumstances."

The application of this rule in Wisconsin need not be decided in the case at bar because the record makes it clear that the use of votive stands and candles is an integral part of the religious ceremonies of the Roman Catholic Church and has been so for centuries. In *Duncan v. Steeper* (1962), 17 Wis. (2d) 226, 116 N. W. (2d) 154, this court said that a hospital was a charitable institution despite the fact that the income of the hospital exceeded its expenses. Although there was income from the votive candles, the evidence in the case

at bar falls far short of establishing a commercial or nonreligious activity in connection with their use.

### Conclusion.

Susan's circumstances are unfortunate, and we quote the learned trial judge, who expressed his regret in the following well-chosen terms:

"The court's philosophy although sufficient to reach out and grant judicial comfort to the injured parishioner, *Widell,* and strong enough to abolish the archaic rule of immunity enjoyed by charitable organizations does not touch Susan Wojtanowski, the injured minor nor cloak her with its blessings."

This court recognized the anachronism of religious immunity and terminated such immunity, but for very valid reasons such termination was made to operate prospectively only. However, the law is of no more benefit to Susan's case than law was in the view of John Milton when he wrote:

"Law can discover sin, but not remove."

—Paradise Lost, Bk. XII, L. 290

*By the Court.*—Judgment affirmed.