Kenny BAATZ and Peggy Baatz,
Plaintiffs and Appellants,

v.

ARROW BAR a/k/a Arrow Bar, Inc., Edmond E. Neuroth, LaVella J. Neuroth, and Jacquette J. Neuroth, Defendants and Appellees.

No. 15875.

Supreme Court of South Dakota.

Considered on Briefs Feb. 16, 1988.

Decided June 15, 1988.

Rehearing Denied July 19, 1988.

Flynn Fischer, Wessington Springs, for plaintiffs and appellants.

David Alan Palmer of Strange & Palmer, P.C., Sioux Falls, for defendants and appellees.

SABERS, Justice.

*Facts*

Kenny Baatz claims he and his wife, Peggy, were seriously injured when a vehicle operated by a drunk driver, Roland McBride, crossed the center line of a Sioux Falls street and struck and crushed them. Baatz also claims the Arrow Bar served alcoholic beverages to McBride while he was intoxicated prior to the accident. Therefore, Baatz claims that the Arrow Bar's negligence in serving alcoholic beverages to an already intoxicated person contributed further to McBride's intoxication and to their injuries.[1]

The trial court granted summary judgment to the Arrow Bar based on acts passed by the legislature in 1985 which are as follows:

*SDCL 35–11–1:* The Legislature finds that the consumption of alcoholic bever-

---

1. The injuries resulted in leg amputations, medical expenses exceeding $30,000, disabilities, and total loss of income from the date of injuries. Baatz also claims McBride is judgment proof.

ages, rather than the serving of alcoholic beverages, is the proximate cause of any injury inflicted upon another by an intoxicated person. Therefore, the rule in *Walz v. City of Hudson*, 327 N.W.2d 120 (S.D.1982) is hereby abrogated.

*Amendment to SDCL 35-4-78:* ... However, no licensee is civilly liable to any injured person or his estate for any injury suffered, including any action for wrongful death, or property damage suffered because of the intoxication of any person due to the sale of any alcoholic beverage in violation of the provisions of this section.

Baatz appeals, claiming that the state legislature cannot constitutionally, by statute, abrogate a cause of action recognized by the state Supreme Court.

### History

In *Griffin v. Sebek*, 90 S.D. 692, 245 N.W.2d 481 (1976),[2] we refused to recognize a common law cause of action against persons selling or furnishing liquor by persons injured as a result of acts of intoxicated persons. Six years later, in *Walz v. City of Hudson*, 327 N.W.2d 120 (S.D. 1982), we held that a cause of action for injured persons against liquor licensees existed under SDCL 35-4-78 (the unlawful sale of liquor to a minor or an intoxicated person). *Walz* held that violation of SDCL 35-4-78 was negligence as a matter of law.

The majority opinion, authored by Chief Justice Fosheim and joined by Justices Dunn and Henderson, was persuaded by the view of the minority in *Griffin*, as expressed by then Chief Justice Dunn's dissent:

I would respectfully submit that the time has come for this court to recognize

a common law cause of action by an injured party against a seller of alcoholic beverages to an intoxicated person who causes injury by his intoxication. While it is true that this right of recovery was not recognized originally, there is a great difference between an intoxicated person driving a horse and buggy on a dirt road in 1889 and an intoxicated teenager hurtling down the highway at great speed in a five-thousand-pound automobile in 1972.

*Griffin, supra,* 245 N.W.2d at 486-87.

Justice Wollman's special concurrence in *Walz* was joined by Justice Morgan and stated:

I would go further and hold that there is now in this state a common law right of action to recover such damages. I would reach this result because I believe that those of us who were in the majority in *Griffin v. Sebek* took too narrow[3] a view of the responsibility of the judiciary to fill a void by common law adjudication in the face of legislative in action.

*Walz, supra* at 123.

1. RETROSPECTIVE OR PROSPECTIVE APPLICATION OF SDCL 35-4-78(2) AND WALZ

A. *Prospective Effect of SDCL 35-4-78(2)*

■ The majority in *Walz* noted that the court in *Griffin* had "declined to expand the common law to afford a remedy" and "also did not extend SDCL 35-4-78(2) to impose a civil liability duty." *Walz, supra* at 122. However, the court went on to state that "[s]ince *Griffin* essentially turned on a reluctance to impose a common law duty[4] in the absence of express civil

2. For prior history of this area of South Dakota law, see Justice Coler's opinion beginning at 245 N.W.2d 482. For a statement covering all of these issues, Justice Dunn's dissent suggested reading the dissent by Hallows, C.J., in *Garcia v. Hargrove*, 46 Wis.2d 724, 736-38, 176 N.W.2d 566, 572 (1970).

3. Justice Wollman's explanation for the change from his prior view is noteworthy:

To those who might question why I have reversed my position since the decision in

*Griffin v. Sebek*, I can only quote Justice Frankfurter's aphorism that "[w]isdom too often never comes, and so one ought not to reject it merely because it comes late." *Henslee v. Union Planters National Bank & Trust Co.*, 335 U.S. 595, 600, 69 S.Ct. 290, 293, 93 L.Ed. 259, 264 (1949) (Frankfurter, J., dissenting).

*Walz, supra* at 124.

4. The dissent is incorrect in its assertion that the *Walz* decision recognized a common law cause of action. The *Walz* majority recognized *only*

liability legislation, we did not fully reach Justice Dunn's interpretation of SDCL 35–4–78(2). We do now." *Id.* The court then discussed SDCL 35–4–78(2) and concluded that the statute had established "a standard of care or conduct, a breach of which is negligence *as a matter of law.*" (emphasis added) *Id.* at 123. Clearly, the *Walz* decision is based upon a cause of action existent under SDCL 35–4–78(2), (which should control the date of application).

It can be argued that *Walz* should not be applied retroactively because: (1) the *Walz* majority did not address the application issue, (2) caselaw holds that where prior settled law is overturned, the decision should be prospectively applied, and (3) to apply *Walz* retroactively would be inequitable.

We believe the *Walz* majority opinion, read in its entirety, clearly demonstrates that the court determined that "[s]ince this decision applies existing statutory law," it was unnecessary to state that the decision was both prospective and retrospective. SDCL 35–4–78(2) was a statute within the Codified Laws of South Dakota before any of the actions in this case or *Walz* occurred. As such, it provided a standard of care or conduct from the moment it became law. There has been criticism of the negligence per se rule, *see* Prosser, *Law of Torts* § 36 (4th ed. 1971); *3 Cooley on Torts* § 481 (4th ed. 1932); *5 The Law of Torts* § 17.6 (1988), however, it is clear that this rule has been adhered to by this court for some time. "The violation of a statute enacted to promote safety constitutes negligence per se." *Engel v. Stock*, 88 S.D. 579, 581, 225 N.W.2d 872, 873 (1975); *Bothern v. Peterson*, 83 S.D. 84, 155 N.W.2d 308 (1967); *Blakey v. Boos*, 83 S.D. 1, 153 N.W.2d 305 (1967). It is inconceivable that violation of a statute may be negligence

per se on one day, but cannot be the day before.

*Walz* did not overrule prior settled law. *Griffin* dealt with the common law cause of action and there was no "prior settled law" construing civil liability under SDCL 35–4–78(2).

Finally, it is no more inequitable to apply *Walz* retrospectively than it is, in any case, to acknowledge that violation of a criminal statute may result in a finding of civil liability. Generally, bar owners were aware of SDCL 35–4–78(2) and the acts it prohibited and cannot assert ignorance. The negligence per se rule has never been restricted to only those laws which facially provide both civil and criminal remedies and the wisdom of so doing is not a question before this court.

Therefore, based upon a clear reading of *Walz* and the application of the well-settled rule of negligence per se, we hold that the decision in *Walz* was intended to apply both retrospectively and prospectively.

#### B. *Retrospective Application of Walz*

Even if it were conceded that *Walz* impliedly overrules the precedent established in *Griffin*, *Walz* can and should be applied retroactively.

The general rule in civil cases seems to be that unless the overruling decision declares that it shall have only prospective effect, which the court overruling its prior decision generally has the power to do, the judicial overruling of a precedent has both prospective and retroactive effect.

20 Am.Jur.2d *Courts* § 233 (1965). This general rule has been denominated the "Blackstonian Doctrine," *Fitzgerald v. Meissner & Hicks, Inc.*, 38 Wis. 571, 157 N.W.2d 595, 596 (1968), and appears to have evolved from a traditional view of the

that a statutorily-based cause of action existed. Justice Wollman, in his special concurrence urged the adoption of common law liability (an unnecessary act if the majority had already done so), and within that context said: "Inasmuch as the imposition of common law liability *would* [if adopted] mark an abrupt departure from our prior holding in *Griffin*, ... I *would* apply the benefit of *such* a decision ... [pro-

spectively]." (emphasis added) *Id.* at 124. Webster's New International Dictionary, 2d ed. (1937) defines "would" as "an expression of desire or wish" or "what might be expected." Neither of these definitions comports with an interpretation suggesting that Justice Wollman was stating that the majority *had* adopted the common law liability basis.

judiciary as the interpretors of law. "As a matter of constitutional law, retroactive operation of an overruling decision is neither required nor prohibited." Comment, "Prospective or Retroactive Operation of Overruling Decision," 10 A.L.R.3d 1371 § 2; Annotation, "United States Supreme Court's Views as to Retroactive Effect of Its Own Decisions Announcing New Rules," 22 L.Ed.2d 821, 830 (hereinafter S.Ct. Annotation). The United States Supreme Court has developed criteria for determining retroactivity of new rules which are substantially the same as those enunciated by this court in *State v. One 1966 Pontiac Auto.*, 270 N.W.2d 362, 365 (S.D. 1978). These criteria are: "(1) the purpose to be served by the particular new rule; (2) the extent of reliance which had been placed upon the old rule; and (3) the effect on the administration of justice of a retroactive application of the new rule." *S.Ct. Annotation, supra* at 832.

The first criteria is the purpose to be served by the new rule. Clearly, one general purpose of the rule in *Walz* was to recognize an implied civil cause of action under a criminal statute. If retroactive application is necessary to effectuate the purpose of the new rule, then this is a significant factor in giving the new rule retroactive effect. *S.Ct. Annotation* § 4[b] at 832. The court in *Walz* believed that SDCL 35–4–78(2) was enacted to protect citizens "from the risk of being killed or injured 'as a result of the drunkenness to which the particular sale of alcoholic liquor contributes.'" *Walz*, 327 N.W.2d at 122–123. Thus, to effectuate the interpreted intent and purpose of the statute, it was and is necessary to give the decision retroactive application.

It is argued that there was good-faith reliance on the old rule (i.e., *Griffin*) and, therefore, *Walz* should not be applied retroactively. Specifically, it is argued that it is inequitable to apply the new rule

because many bar owners did not have liability insurance coverage for these situations prior to *Walz* and thus could suffer severe monetary losses, and that the state of the law was and is unclear. Although we agree that the imposition of liability, where proven, may be financially harsh for bar owners who were not covered by insurance, this must be balanced against the harsh effect non-retroactivity would have upon those wrongfully injured whose economic and physical losses may be more severe. Additionally, as mentioned above, there is no question that SDCL 35–4–78(2) prohibited bar owners from serving intoxicated persons or minors. The conduct in question was prohibited and proven violation of the statute was punishable by criminal sanctions. We do not believe good-faith reliance means that violators of SDCL 35–4–78(2) relied upon violation only costing them a one thousand dollar fine, one year of imprisonment, or both. *See* SDCL 22–6–2. Additionally, the retroactive application of *Walz* is unlikely to have a significant effect on the administration of justice.

### C. *Prospective Application of Walz*

■ Even if the decision in *Walz* were given only prospective application, it would not bar the suit by these plaintiffs under this court's prior interpretation of prospective application.

The court in *City of Aberdeen v. Meidinger*, 89 S.D. 412, 233 N.W.2d 331 (1975) determined that the holding therein would have only prospective application. The court stated that the *Meidinger* decision "does not apply to *cases handled by the ... courts* previous to the date of this decision." (emphasis added) *Id.*, 233 N.W.2d at 334. A review of prior cases involving both prospective and retroactive application make it clear that prospective application means the overruling decision is *not* applied to *cases* commenced before the decision was announced.[5] Therefore, the

---

5. *City of Sioux Falls v. Mini-Kota Art Theatres,* 247 N.W.2d 676, 677 (S.D.1977) ("Since this case was tried prior to our decision in ... *Meidinger, supra,* defendant cannot avail itself of that holding."); *Vogt v. Billion,* 405 N.W.2d 635, 637 (S.D.1987) (*Shamburger v. Behrens,* 418 N.W.2d 299 (S.D.1988), given limited retroactive application: "We conclude that the *Shamburger* decision is applicable to all cases pending on direct appeal to this court at the time of its announcement."); *State v. Connors,* 82 S.D. 489, 494, 149 N.W.2d 65, 67 (1967) (*Escobedo* and *Miranda*

overruling decision *is* applied to cases commenced *after* the decision is announced. The *Walz* decision was announced in 1982 and Baatz commenced this action in 1984. Therefore, the *Walz* decision applies to the *Baatz* action.

Although it can be argued that prospective application should mean the decision is applied only to transactions or events occurring after the announcement of the decision, this is not what our prior caselaw indicates and for obvious sound reason.

## 2. CAN THE LEGISLATURE ABROGATE RIGHTS THAT FLOW FROM LEGISLATIVE ACTS OR STATUTES?

In 1985, the legislature enacted SDCL 35–11–1 and amended SDCL 35–4–78 as indicated above. Shortly thereafter, this court held in *Selchert v. Lien*, 371 N.W.2d 791 (S.D.1985), that a surviving wife had a cause of action for wrongful death against a liquor licensee and his employees where they continued to serve the intoxicated husband in violation of SDCL 35–4–78(2) resulting in his death.[6] The court acknowledged the legislative abrogation of *Walz* but noted that the statute became effective July 1, 1985, thereby impliedly refusing to give it retroactive application.

Obviously, the legislature can abrogate the rights that flow from legislative acts and statutes. They can do so simply by repealing the statute from which the rights flow. In this case, all they had to do was repeal SDCL 35–4–78. But they did not repeal the statute, they simply amended it

as indicated above and enacted a separate statute—SDCL 35–11–1.

First, the legislative finding in SDCL 35–11–1 that consumption rather than serving of alcoholic beverages is the proximate cause of any injury inflicted upon another by an intoxicated person, may or may not be the fact depending upon the circumstances. In many cases, there are more than one, if not several factors contributing to an injury. The negligent acts or omissions of several wrongdoers can contribute to and be the proximate cause of resulting injuries. In addition, the task of determining the proximate cause of injuries in individual cases is the duty of the courts and juries, not the legislature.[7] In view of these uncertainties, the legislative finding in SDCL 35–11–1 is not effective to abrogate the rule in *Walz*.

The amendment to SDCL 35–4–78 presents a closer question. It clearly appears that the legislature's intent was to destroy the cause of action which the South Dakota Supreme Court recognized under SDCL 35–4–78. The question is whether they accomplished their intention. In this context, it is necessary to examine the basis of the rule in *Walz*, which was that SDCL 35–4–78 was a safety statute, passed for the protection of the injured. As stated in *Walz, supra* at 122:

> The reason for this rule is that the statute or ordinance becomes the standard of care or conduct to which the reasonably prudent person is held. Failure to follow the statute involved constitutes a breach of the legal duty imposed and fixed by such statute. Since negligence is a

decisions "apply only to trials commenced after the date on which each decision was announced."); *One 1966 Pontiac Auto., supra* (appellant had default judgment entered against him one year before operative statute declared unconstitutional); *State v. Hoffman*, 409 N.W. 2d 373, 376 (S.D.1987) (decision is prospective only but retrospective in that it covers appellants and appeals filed prior to entry of decision).

**6.** Decedent-husband drove home from the bar, parked his car in the garage, closed the garage door by remote control, stayed in the vehicle, and died of carbon monoxide poisoning.

**7.** "Where, however, the facts out of which a moral or legal obligation is claimed to arise

are disputed, the contention falls within the province of the courts, under the distribution of governmental powers prescribed by our constitution."
*Board of Education v. State ex rel. Lindsay,* 38 N.E. 614, 618 (Ohio 1894).

> "[T]he Legislature may not declare the weight to be given to evidence or what evidence shall be conclusive proof of an issue of fact, ... whether evidence is of probative value is a legal question, and the Legislature cannot impair judicial analysis and resolution of such questions."

*State v. Burling,* 224 Neb. 725, 730, 400 N.W.2d 872, 876 (1987).

breach of a legal duty, the violator of a statute is then negligent as a matter of law. (citation omitted)

*Alley v. Siepman,* 87 S.D. 670,674, 214 N.W.2d 7, 9 (1974).

SDCL 35–4–78 continues to provide in part that

"No licensee may sell any alcoholic beverage:

.    .    .    .    .

(1) To any person under the age of twenty-one years; or
(2) To any person who is obviously intoxicated at the time, or who is known to the seller to be an habitual drunkard."

.    .    .    .    .

It is obvious that despite the amendment, the statute continues to provide a standard of care or duty, the breach of which continues to give rise to an action for injuries against a wrongdoer, or wrongdoers as the case may be. "As the legislature cannot set aside the construction of the law already applied by the courts to actual cases, neither can it compel the courts for the future to adopt a particular construction of a law which the legislature permits to remain in force." *Cooley's Constitutional Limitations* 191 (8th ed. 1927). To say that civil liability for such wrongdoing shall rest solely with the consumer, to the exclusion of all other wrongdoers, is questionable in fact and in theory. In fact, the words of the amendment acknowledge serving of alcoholic beverages as a cause of injuries contrary to the legislative finding in SDCL 35–11–1. The amendment is inconsistent with the statute. That is, the amendment contradicts the legislative finding; it simply purports to absolve civil liability therefor. This can be done, by eliminating the statute, but it was not done here. In addition, as indicated above, the task of determining proximate cause (and civil liability for wrongdoing) belongs to the courts, not the legislature. "The judicial power 'is the power to hear and determine those matters which affect the life, liberty, or property of the citizens of the State.'" *Cooley's Constitutional Limitations, supra* at 184 n. 3, *citing City of*

*Sapulpa v. Land,* 101 Okl. 22, 223 P. 640 (1924). Therefore, the amendment to SDCL 35–4–78 also fails to accomplish its purpose.

3.  **EFFECTIVE DATE OF SDCL 35–11–1 AND AMENDED SDCL 35–4–78 AND RETROACTIVE APPLICATION**

■ The attempted abrogation of the rule in *Walz* did not bar Baatz' cause of action for another reason. The statute and the amendment were enacted into law during the 1985 legislative session and became effective on July 1, 1985. Baatz started their action against the Arrow Bar in 1984.

It is settled law in this state that a statute will not operate retroactively unless the legislative act clearly expresses an intent that it so operate. *Matter of Adams,* 329 N.W.2d 882 (S.D.1983); *State ex rel. Van Emmerik v. Janklow,* 304 N.W.2d 700 (S.D.1981); *First Nat. Bank of Minneapolis v. Kehn Ranch,* 394 N.W.2d 709, 716 (S.D.1986). *See also* SDCL 2–14–21. "Also, under SDCL 2–14–24, no civil action commenced before the present code of laws took effect is affected by its provisions." *First Nat. Bank, supra* at 716. Accordingly, we conclude that the Baatz lawsuit filed against Arrow Bar in 1984 is not affected by a statute subsequently enacted in 1985.

4.  **COMMON LAW, STATUTORY, AND CONSTITUTIONAL RIGHTS**

The attempt to legislate in this area fails for an even more basic reason—the Constitution of the State of South Dakota and other South Dakota law in existence on July 1, 1985.

South Dakota Constitution, art. VI § 20 provides:

"All courts shall be open, and every man for an injury done him in his property, person or reputation, shall have remedy by due course of law, and right and justice, administered without denial or delay."

SDCL 20–9–1 provides in part:

"Every person is responsible for injury to the person, property, or rights of an-

other caused by his willful acts or caused by his want of ordinary care or skill[.]"

As indicated above, these constitutional and statutory provisions were in full force and effect on July 1, 1985. They continue in existence as of this date. In *Bego v. Gordon*, 407 N.W.2d 801, 806 (S.D.1987), after noting the state's immunity from suit without legislative consent, we stated:

> [T]he liability of a state employee for his own negligent or intentional acts is another matter. "Every person is responsible for injury to the person, property, or rights of another caused by his willful acts or ... want of ordinary care[.]" SDCL 20-9-1. The remedy provided by common law and by this statute is supported not only by the "open courts" provision but by other substantial constitutional provisions.[8]

SDCL 20-9-1 is a simple codification of the common law of negligence. In essence, then, the South Dakota Constitution and existing statutory law provide that an injured person has a right to a remedy against a wrongdoer. *Zacher v. Budd Co.*, 396 N.W.2d 122 (S.D.1986); *Oien v. City of Sioux Falls*, 393 N.W.2d 286 (S.D.1986); *Daugaard v. Baltic Co-op Bldg. Supply Ass'n*, 349 N.W.2d 419 (S.D.1984). This is so whether the wrongdoer acts alone or with another wrongdoer. *Bego, supra.*

The legislature can impose reasonable restrictions upon available remedies and even upon these rights in accordance with the constitution, as long as they do not violate the constitution; but they cannot destroy these rights in violation of the constitution.

We reverse and remand for trial.

8. These other substantial constitutional provisions relied upon in *Bego, supra* at 806, were from art. VI of the South Dakota Constitution as follows:

§ 1. *Inherent rights.* All men have certain inherent rights including enjoying and defending life and liberty, acquiring and protecting property and the pursuit of happiness.
§ 2. *Due Process.* No person shall be deprived of life, liberty, or property without due process of law.
§ 12. *Privilege or immunity laws.* No law granting an irrevocable privilege, franchise or immunity shall be passed.

HENDERSON, J., concurs.

WUEST, C.J., concurs in part.

MORGAN and MILLER, JJ., dissent.

WUEST, Chief Justice (concurring in part).

I concur in issue 1 (Retrospective or Prospective Application of SDCL 35-4-78(2) and *Walz*) and issue 3 (Effective Date of SDCL 35-11-1 and amended SDCL 35-4-78 and Retroactive Application) of the majority opinion. This requires a reversal of the judgment of the trial court. In my opinion, it is unnecessary to discuss the other issues in the majority and dissenting opinions. This court will review a law's constitutionality only when necessary for a determination upon the merits of a cause. *Investigation of Hy. Const. Ind. v. Bartholow*, 373 N.W.2d 419, 420 (S.D.1985); *State v. Big Head*, 363 N.W.2d 556, 559 (S.D.1985); *Baldwin v. First Nat. Bank of Black Hills*, 362 N.W.2d 85, 90 (S.D.1985).

MILLER, Justice (dissenting).

I dissent.

### RETROACTIVE/PROSPECTIVE ANALYSIS

In my view, the trial court erred in not addressing the retroactive versus prospective application issue, rather than merely ruling that the *Walz* decision was statutorily abrogated. The majority compounds the error through its flawed analysis of that issue.[1] In my opinion, the trial court's judgment should be affirmed on the basis of a prospective application of *Walz v. City of Hudson*, 327 N.W.2d 120 (S.D.1982).

§ 18. *Equal privileges or immunities.* "No law shall be passed granting to any citizen, class of citizens or corporation, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations."

1. The majority would minimize the importance of this issue, suggesting that a violation of the statute is negligence *per se*. It totally fails to take into account that such argument was impliedly rejected by the majority in *Griffin* (since only the dissent reaches the point).

A chronology of events demonstrates my rationale. In 1976, in *Griffin v. Sebek*, 90 S.D. 692, 245 N.W.2d 481, this court held that no common law dram shop action (and impliedly, no statutory cause of action) existed in this state. The plaintiff herein was injured on July 24, 1982. On December 15, 1982, (five months *after* plaintiff's injuries) this court handed down *Walz*, recognizing *for the first time* a statutory law dram shop cause of action. Subsequently, the legislature amended the statutes as indicated in the majority opinion.

Certainly *Walz* cannot and should not be given a retroactive application for all injuries incurred prior to its issuance. First of all, the majority claims that *Walz* did not overrule prior settled law, as "there was no prior settled law construing civil liability under SDCL 32–4–78(2)." I disagree.

As noted by Justice Morgan in his special concurrence in *Walz*, although the interpretation of SDCL 35–4–78(2) was "not adopted by the majority in *Griffin*, its mention implies that it was considered." Furthermore, footnote 3 of the *Griffin* majority opinion indicates that the court did not wish to interpret SDCL 35–4–78 as the *Walz* court subsequently did. That footnote states:

> In a very recent decision of the Nebraska Supreme Court, *Holmes v. Circo*, 1976, 196 Neb. 496, 244 N.W.2d 65, Justice Brodkey, the writer thereof, has reviewed not only that state's legislative history but has also cited several decisions construing statutes which were similar to the Nebraska statute 53–180, R.R.S.1943, *and which are not unlike SDCL 35–4–78*. The Nebraska court also considered the landmark cases of *Waynick v. Chicago's Last Dept. Store*, 1959, 7 Cir., 269 F.2d 322, 77 A.L.R.2d 1260 and *Rappaport v. Nichols*, 1959, 31 N.J. 188, 156 A.2d 1 in relation to their

statutes and decisions and have, by that process, *arrived at the same conclusion reached by this court.* (Emphasis added.)

*Griffin* at 486.

Thus, Justice Morgan (and Justice Wollman, on other grounds) was correct in stating that the *Walz* decision should apply *only* to the plaintiff therein and to those causes of action *occurring on and after* the date of the remittitur in the case. *See also Lewis v. State*, 256 N.W.2d 181 (Iowa 1977); *City of Sioux Falls v. Mini–Kota Art Theatres*, 247 N.W.2d 676 (S.D.1977) (where prior settled South Dakota law is overruled, the holding should be prospective only); *City of Aberdeen v. Meidinger*, 89 S.D. 412, 233 N.W.2d 331 (1975); *Fisher v. Sears, Roebuck & Co.*, 88 S.D. 1, 214 N.W.2d 85 (1974) (prospectivity should apply especially where the public has reasonably relied on a different concept); *Rollinger v. J.C. Penney Co.*, 86 S.D. 154, 192 N.W.2d 699 (1971), *overruled on other grounds Smith v. Tobin*, 311 N.W.2d 209 (S.D.1981).

As stated in *Vogt v. Billion*, 405 N.W.2d 635, 636–37 (S.D.1987) (citations omitted): "We recognize that '... the Constitution neither prohibits nor requires retroactive effect.... When retroactive application of a decision could produce substantial *inequitable results*, justification exists for holding the decision nonretroactive....'" (Emphasis added.) *See also People in the Interest of S.H.*, 323 N.W.2d 851 (S.D. 1982). Further, in *State v. One 1966 Pontiac Auto.*, 270 N.W.2d 362, 365 (S.D.1978) (citations omitted), this court evaluated the following criteria "to determine the retrospective effect of a particular decision: (1) the purpose of the decision, (2) reliance on the prior rule of law, and (3) the effect upon the administration of justice." [2]

---

**2.** In *Fisher v. Sears, Roebuck & Company*, 88 S.D. 1, 4, 214 N.W.2d 85, 87 (1974) (quoting *Chevron Oil Company v. Huson*, 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296, 306 (1971)), this court stated:

"In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a

new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed.... Second, it has been stressed that 'we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective

Thus, the result for either prospective or retroactive application may vary from decision to decision depending upon the result of the criteria evaluated.

In my view, the analysis of the criteria in this case demands that prospective application be employed. As we said in *Vogt, supra* at 637, "... once the need is established for applying a principle prospectively there is a large measure of judicial discretion involved in deciding the time from which the new principle is to be controlling."

> [T]he modern rule followed by most courts is to "treat the question of how an overruling decision should operate as one of judicial policy rather than of judicial power, and recognize that varying results may be reached, depending upon the particular circumstances presented and the particular rule affected."

*Fountain v. Fountain,* 214 Va. 347, 200 S.E.2d 513 (1973), *cert. denied,* 416 U.S. 939, 90 S.Ct. 1942, 40 L.Ed.2d 290, *reh'g denied,* 417 U.S. 927, 94 S.Ct. 2636, 41 L.Ed.2d 231 (1974), *citing* 10 A.L.R.3d at 1378, 1383–84; Currier, Time and Change in Judge–Made Law: Prospective Overruling, 51 Va.L.Rev. 201, 206 et seq (1965).

For authority stating that the overruling decision should not be retroactively applicable to transactions or events which occurred prior to the time that the overruling case was decided *see City of Aberdeen v. Meidinger,* 89 S.D. 412, 233 N.W.2d 331 (1975); *People v. Patton,* 57 Ill.2d 43, 309 N.E.2d 572 (1974); 10 A.L.R.3d 1371 (1966). In fact, in *City of Sioux Falls v. Mini–Kota Art Theatres,* 247 N.W.2d 676 (S.D. 1977), the court did not retroactively apply the decision of *City of Aberdeen, supra.*[3]

Authority supporting the proposition that the overruling case should not apply to *pending* cases include: *Lyons v. Westinghouse Electric Corp.,* 235 F.Supp. 526 (S.D.

N.Y.1964); *Culpepper v. Culpepper,* 147 Fla. 632, 3 So.2d 330 (1941); *State v. Stout,* 90 Okl.Crim. 35, 210 P.2d 199 (1949); *Molitor v. Kaneland Community Unit Dist.,* 18 Ill.2d 11, 163 N.E.2d 89 (1959), *cert. denied* 362 U.S. 968, 80 S.Ct. 955, 4 L.Ed.2d 900 (1959); *Holytz v. Milwaukee,* 17 Wis.2d 26, 115 N.W.2d 618 (1962). *Holytz,* in fact, was given prospective application subsequently in *Hennington v. Valuch,* 19 Wis. 2d 260, 120 N.W.2d 44 (1963) and *Marshall v. City of Green Bay,* 18 Wis.2d 496, 118 N.W.2d 715 (1963). *Molitor* was prospectively applied in *Terry v. Mt. Zion Community Unit School Dist.,* 30 Ill.App.2d 307, 174 N.E.2d 701 (1961); *List v. O'Connor,* 19 Ill.2d 337, 167 N.E.2d 188 (1960).

As stated in *Prospective or Retroactive Operation of Overruling Decisions,* 10 A.L.R.3d 1371, 1386 (1966):[4]

> It has often been held or recognized that where particular persons have acted in justifiable reliance on a subsequently overruled judicial decision and retroactive application of the overruling decision would defeat their reliance interests, such reliance interests should receive adequate protection, and the overruling decision should be denied retroactive application in order to prevent such persons from being subjected to unfairness or undue hardship. For example, it has been recognized in connection with the overturning of immunities from tort liability that those who had previously been held immune may have *decided, in reliance upon earlier decisions, not to obtain insurance coverage or* not to bother investigating accidents or gathering or preserving evidence, and *that such reliance interests are entitled to be protected.* (Emphasis added.)

Similarly, in decisions overturning the doctrine of charitable immunity from tort liability, many jurisdictions have concluded that such organizations have relied on earli-

---

operation will further or retard its operation.' ... Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.'" ... (Citations omitted.)

3. The *City of Aberdeen* and *City of Sioux Falls* cases in this paragraph were cited by the majority, but clearly not properly analyzed.

4. This annotation was relied upon by the majority. In reality, it is more supportive of my position.

er decisions to uphold their immunity. Such jurisdictions have retroactively applied the overruling decision to the overruling case itself, but prospectively to all other cases. In *Darling v. Charleston Community Memorial Hospital*, 33 Ill.2d 326, 211 N.E.2d 253, *cert. denied* 383 U.S. 946, 86 S.Ct. 1204, 16 L.Ed.2d 209 (1966), wherein it appeared that charitable corporations could now be held liable for more than its liability insurance coverage, the court noted that such corporations may have relied on earlier decision in deciding whether to carry insurance, and how much. The court held the new rule would be, with exception to the instant case at hand, given prospective effect only from the date upon which the opinion in the instant case became final. *See also Molitor, supra; Spanel v. Mounds View School Dist.*, 264 Minn. 279, 118 N.W.2d 795 (1962); *Parker v. Port Huron Hospital*, 361 Mich. 1, 105 N.W.2d 1 (1960); *Kojis v. Doctors Hospital*, 12 Wis. 2d 367, 107 N.W.2d 292 (1961); *Widell v. Holy Trinity Catholic Church*, 19 Wis.2d 648, 121 N.W.2d 249 (1963); *Burns v. Owens*, 459 S.W.2d 303 (Mo.1970); *Myers v. Drozda*, 180 Neb. 183, 141 N.W.2d 852 (1966); *Wojtanowski v. Franciscan Fathers*, 34 Wis.2d 1, 148 N.W.2d 54 (1967); *Goller v. White*, 20 Wis.2d 402, 122 N.W.2d 193 (1963) (wherein the abrogation of parental immunity was limited to the instant case and to causes arising on or after opinion was filed).

In view of our clear precedent, it is obvious that it is improper for this court to give *Walz* a retroactive application. *Walz* obviously established a new rule of law (specifically overruling a decision on an *identical* issue issued only six years earlier). Litigants have relied on our prior holding (*Griffin*)—for example, defendant here has acquired or terminated liability insurance coverage based upon the law in existence at the appropriate, material times; and presumably other liquor dealers have similarly relied and so acted in an attempt to insure against possible liability. Lawyers are placed in the difficult, if not untenable, position of not being able to properly advise their clients as to the state of the law—even to this day. Further, "substantial inequitable results" arguably exist by

the retroactive application of *Walz*—e.g., possible defendants are subjected to severe monetary liability, all of which hinges on their ability or lack of ability to predict the law of this state when this court has, in reality, caused the confusion. Everyone, be they individuals, bible merchants, or bar owners, is entitled to fundamental fairness and due process.

## CONSTITUTIONAL ISSUES

Before addressing the constitutional issues, it is important for me to point out that I philosophically agree with the majority and concurrences in their condemnation of any legislative act which prohibits injured parties from recovering against wrongdoers. Philosophically, too, I agree with this court's prior holding in *Walz*, which recognized, for the first time, a cause of action for negligence for the violation of a statute making it a crime to sell liquor to minors, habitual drunkards, and persons who are obviously intoxicated. Further, I personally believe that the legislature acted improvidently in abolishing the rule in *Walz* and in specifically absolving liquor dealers from civil liability. However, my personal feelings cannot enter into my judicial decisions.

In a prior case in this court, our predecessors struggled with similar strong sentiments reluctantly upholding the constitutionality of the guest statute. *Behrns v. Burke*, 89 S.D. 96, 229 N.W.2d 86 (1975). Justice Doyle, writing for the majority, stated: "Any law that allows one person to injure another in this manner and escape liability is unreasonable. In fact, unreasonable may be too kind an expression." 89 S.D. at 107, 229 N.W.2d at 92. Justice Doyle went on to say: "We sympathize with those who find the statute unjust, but we are bound to exercise judicial restraint (a great deal of it in this case) and not substitute our judgment and wisdom for that of the legislature." 89 S.D. at 108, 229 N.W.2d 93.

I respectfully suggest that the majority author and those specially concurring are failing to exercise proper judicial restraint in order to reinforce or persist in enforcing a *judicially created* civil remedy. They

seem to overlook that " '[i]t is not the function of the Court to inquire into the wisdom, policy, necessity, or expediency of legislation.' " *Behrns*, 89 S.D. at 109, 229 N.W.2d at 93 (Coler, J., concurring specially—joined by Justices Wollman and Winans); *State ex rel. Dunker v. Spink Hutterian Brethren*, 77 S.D. 215, 90 N.W.2d 365 (1958).

Our constitution (Article VI, § 20) *does not create rights of action.* It provides for a *right of access* to the courts only for causes of action recognized by common law or statute. *McMacken v. State*, 320 N.W. 2d 131 (S.D.1982) *aff'd on reh'g* 325 N.W. 2d 60 (1982); *Behrns, supra; Simons v. Kidd*, 73 S.D. 41, 38 N.W.2d 883 (1949). *Simons* is clearly the recognized landmark case upon which most subsequent cases have relied[5] (although conspicuously ignored by the majority, the special concurrences, and *Daugaard v. Baltic Co-op. Bldg. Supply Ass'n*, 349 N.W.2d 419 (S.D. 1984)). In *Simons*, it was held that Article VI, § 20, prohibits the legislature from arbitrarily abolishing common law legal rights which existed or were known *when the constitution was adopted.* Certainly no one would seriously argue that dram shop actions were recognized, known, or contemplated by the drafters of our constitution. No one, including this court, has recognized that common law right.

Thus, Article VI, § 20, does not prohibit the legislature from abolishing this cause of action as it did not exist at common law at the time our constitution was adopted. *Daugaard, supra; Simons, supra;* Jensen, *Legislative Larceny: The Legislature Acts Unconstitutionally When It Arbitrarily Abolishes or Limits Common Law Rights of Redress for Injury*, 31 S.D.L. Rev. 82 (1985).

My general position and concerns in this case are the same as those previously well-articulated by Justice Wollman in his dissent in *Daugaard, supra*, wherein he stated:

> If we were free to strike down statutes willy-nilly on the basis of our personal feelings, the result of the proposed opinion might be justifiable. Once this court,

or any other court for that matter, starts down that road, however, I see no end in sight. Although it might well be a heady, enjoyable experience to correct what we may perceive to be unwise, ill-conceived legislation, I see no warrant for us to do so in the absence of palpably unconstitutional legislative action. The judiciary should not have to do penance for the sins of the legislature.

349 N.W.2d at 428.

However, even applying the majority language of *Daugaard,* I believe that under settled law (e.g., *Behrns, Simons,* etc.) the majority ruling here results in a substantial interference with and does violence to constitutional separations of power. It is not for this court, but rather the legislature, to determine and set public policy considerations in this state.

In *McMacken*, 320 N.W.2d at 133, Justice Morgan noted that it is settled law that the party challenging the constitutionality of a statute

> bears the burden of proving beyond a reasonable doubt that the statute violates a federal or state constitutional provision. A strong presumption in favor of the constitutionality of the statute exists and is rebutted when it appears clearly, palpably and plainly that the statute violates some provision of the South Dakota Constitution.... On such challenges, we are unconcerned with the legislative wisdom behind [the statute], since we limit our review to the statute's constitutionality.... (Citations omitted.)

I disagree with Chief Justice Wuest and Justice Henderson who both argue that unconstitutional special legislation has been enacted here. The well-settled applicable test for determining whether "special" legislation has been unconstitutionally enacted is:

> (1) Does the legislation uniformly treat all members of the legislatively created class?
> (2) Does the legislation promote the public interest?

*State v. Smith,* 88 S.D. 76, 216 N.W.2d 149 (1974). *See also McMacken, supra; Matter of Certain Territorial Electric Boundaries,* 281 N.W.2d 65 (S.D.1979).

---

**5.** *See* Jensen, *Legislative Larceny: The Legislature Acts Unconstitutionally When It Arbitrarily* *Abolishes or Limits Common Law Rights of Redress for Injury,* 31 S.D.L.Rev. 82 (1985).

In this case, the first prong of the test has been affirmatively met because all members of the legislatively created class (i.e. those persons injured by the particular class of potential defendants—liquor dealers) are uniformly treated (i.e., none can sue for damages). *Behrns, supra; Jensen,* 31 S.D.L.Rev. 82, *supra.* The constitution only prevents discrimination and lack of uniform treatment *within* a class, rather than between classes. *McMacken, supra; Certain Territorial Boundaries, supra; Smith, supra; First National Bank v. Halstead,* 56 S.D. 422, 229 N.W. 294 (1930).

The second prong is also affirmatively met since this court's holdings in *Smith* and *Certain Territorial Boundaries* dictate that *we* must not second guess the wisdom of the disputed legislation. Additionally, in *Certain Territorial Boundaries citing Smith, supra,* we held that the legislative conclusion will not be overridden if it can be supported on any reasonable ground.

I am convinced that plaintiffs have failed to meet their burden of proving beyond a reasonable doubt that the legislation is unconstitutional. *McMacken, supra.* They have failed completely to establish that the statutory language is unreasonable and does not promote public interest. We cannot and should not speculate or second guess the legislature in its exercise of this constitutional prerogative.

I would affirm.

I am authorized to state that Justice MORGAN joins in this dissent.