**CANDEE CONSTRUCTION COMPANY, INC., a North Dakota Corporation, Plaintiff and Appellant,**

v.

**SOUTH DAKOTA DEPARTMENT OF TRANSPORTATION, et al., Defendants and Appellees.**

**Nos. 16552, 16553 and 16558.**

Supreme Court of South Dakota.

Argued May 22, 1989.

Decided Oct. 11, 1989.

Reconsideration Denied Nov. 17, 1989.

Joseph M. Butler, Terry L. Hofer of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, David D. Beaudoin, David C. Roland of LeFevere, Lefler, Kennedy O'Brien & Drawz, Minneapolis, Minn., for plaintiff and appellant.

Franklin J. Wallahan, Debra D. Watson of Wallahan & Watson, Rapid City, for individual defendants.

Thomas R. Lehnert, Ronald W. Banks of Banks, Johnson, Johnson, Colbath & Huffman, P.C., Rapid City, Carl W. Quist, Asst. Atty. Gen., Pierre, for state defendants.

HEEGE, Circuit Judge.

Candee Construction Company (Candee) served and filed a complaint against the South Dakota Department of Transportation (DOT) as well as James Myers (Myers), former South Dakota Secretary of Transportation, and present DOT employees Charles Piper, regional engineer; Dennis Landguth, area engineer; Gary Engel, project engineer; and Glenn Bintliff, project inspector (individual defendants). Candee alleges several causes of action arising from highway construction projects on Highway 16 in the Black Hills during 1984 and 1985. The circuit court granted DOT's and individual defendants' motions to dismiss certain causes of action and partial summary judgment for other causes of action. Both Candee and DOT appeal the circuit court's decisions.

Summarized below is the circuit court's disposition of Candee's causes of action and our decision.

1. The circuit court entered an order granting partial summary judgment which denied Candee's claims seeking additional compensation for rock removed and water applied during construction under the terms and provisions of the contracts. We affirm this order.

2. The circuit court preserved Candee's claim for additional compensation for water used in excess of that required

by a reasonable construction standard. We affirm the circuit court's refusal to dismiss this claim.

3. The circuit court dismissed, for failure to state a cause of action, Candee's claims for additional compensation based on alleged breach of contract and implied contract, and equitable claims of unjust enrichment and defective plans. We reverse the circuit court's dismissal of these claims.

4. The circuit court entered summary judgment, dismissing the civil rights claim of Candee against individual defendants and denying Candee's punitive damage claim. We affirm the circuit court's judgment and order.

5. The circuit court entered an order taxing costs against Candee, including the travel and living expenses of the court reporter who attended the taking of depositions in discovery of this case. We reverse the circuit court's order.

### FACTS

In 1984 Candee was the low bidder on projects 48 and 45, two construction contracts in the Black Hills. Candee was required to apply water for compaction and to excavate rock in excess of DOT's plan estimates which materially changed its cost to complete the contracts. Completion of the projects was delayed. In its bid specifications, DOT combined rock and earth removal into one category, unclassified excavation, and stated it would pay the same price per cubic yard for both earth and rock removal. For the 48 and 45 projects combined, DOT plans called for 975,841 cubic yards of excavation. Of that total, DOT estimated that 324,187 cubic yards would be rock. Candee claims it excavated a total of 1,187,000 cubic yards and at least 503,-952 cubic yards were of rock. DOT has paid the unit price for the total amount of cubic yards excavated by Candee except for 50,000 cubic yards which are disputed.

Candee also encountered overruns for water applied to the projects to assist in compacting the roadbed. Approximately 9,200,000 gallons of water were required in addition to the amount of water estimated by DOT. DOT paid Candee for the excess amount of water at the contract price established by DOT, $6.00 per thousand gallons of water.

Prior to completion of the 48 and 45 projects, Candee prepared to bid on project 41, another road construction project in the Black Hills. James Myers, then secretary of DOT, refused to issue bidding documents to Candee on the 41 project, citing Candee's failure to complete the 48 and 45 projects in a timely fashion.

### 1. ADDITIONAL COMPENSATION FOR ROCK AND WATER UNDER THE CONTRACT

Candee claims that it is entitled to additional compensation under the contract for rock excavated in excess of DOT's plan estimates and water applied for compaction in excess of plan estimates. Candee bases its claim on specifications 4.2 and 4.3.

We first examine Candee's claim for additional compensation for rock excavation under Section 4.2 which provides in pertinent part:

ALTERATIONS OF PLANS—The Department reserves the right to make at any time during the progress of the work such increases or decreases in quantities and such alterations in the work within the general scope of the contract, including alterations in the grade or alignment of the road or structure or both as may be found necessary or desirable. Such increases or decreases and alterations shall not invalidate the contract nor release the surety, and the contractor agrees to accept the work as altered, the same as if it had been a part of the original contract.

．　　．　　．　　．　　．

Unless alterations in plans or increases or decreases in contract quantities materially changes [sic] the cost of performing a contract item or items, such item or items shall be performed as a part of the contract and will be paid for at the contract price or prices.

When alterations in plans or increases or decreases in contract quantities materially changes [sic] the cost of performing a contract or items, an allowance will be made on such basis as may have been agreed to in advance of performance of the work involved.

Prices for items which are predetermined by the Department and set forth in the specifications and/or the proposal form, will not be subject to negotiation because of alterations in plans or quantity changes.

Section 4.2 applies only if DOT alters the plans or otherwise increases or decreases the contract quantities. The quantities set forth in the bid documents are clearly and repeatedly identified as estimates only. Contractors were warned that the actual amount might be greater. DOT placed the burden on contractors to accurately determine the amount of rock to be excavated. Therefore, the fact that Candee encountered rock in excess of DOT estimates was not a change in quantities by DOT.

■ We next examine Candee's additional compensation claim for water under section 4.2. DOT vastly increased the amount of water Candee had to apply over the 5 gallons of water per cubic yard estimated by DOT in the plans. The rate of compensation for water, $6.00 per thousand gallons, was predetermined by DOT. DOT contends that the last paragraph of section 4.2 precludes Candee from receiving compensation greater than the predetermined rate. This paragraph provides: "Prices for items which are predetermined by the Department and set forth in the specifications and/or the proposal form, will not be subject to negotiation because of alterations in plans or quantity changes." The plain meaning of this paragraph excludes renegotiation of predetermined prices for items such as water. The circuit court properly held that Candee was not entitled to additional compensation for water under section 4.2.

■ Candee also urges that it is entitled to additional compensation for rock excavation and water under section 4.3. Section 4.3 provides:

EXTRA WORK—The Contractor shall perform authorized work, for which there is no price included in the contract, whenever it is deemed necessary or desirable in order to complete fully the work as contemplated. Such work shall be performed in accordance with the specifications and as directed, and will be paid for as provided under Section 9.5.

Extra work is defined in clause 1.27 of the Specifications Book as: "An item of work not provided for in the contract as awarded but found by the Engineer essential to the satisfactory completion of the contract within its intended scope." The court defined the term "extras" as used in connection with construction contracts in *Sweetman Const. Co., Inc. v. State*, 293 N.W.2d 457 (S.D.1980). We held that "extras" "means work or costs arising outside of and entirely independent of the contract; that is, something not required in its performance, not contemplated by the parties, and not controlled by the contract." 293 N.W.2d at 460.

Both rock excavation and water for compaction were a material aspect of each project.

Candee's excavation bid included rock excavation, and DOT set out in its bid specifications that water would be used for compaction. These items were provided for in the contract and were not work subsequently found by the engineer to be essential for the satisfactory completion of the project. Rock excavation and water for compaction were items required for the performance of the contracts, contemplated by the parties and controlled by the contract. These items cannot be properly considered as extra work.

## 2. ADDITIONAL COMPENSATION FOR WATER UNDER A REASONABLE CONSTRUCTION STANDARD

■ Candee made further claim that it was entitled to additional compensation because the water necessitated by DOT exceeded that required by a reasonable construction standard. The circuit court preserved this claim, refusing to dismiss the claim, relying on *Northern Imp. Co. v.*

*S.D. State Highway Com'n,* 314 N.W.2d 857 (S.D.1982). We agree. A reasonable construction standard applies to this case and if the water required by DOT exceeded that required by a reasonable construction standard, Candee is entitled to compensation for such excess.

### 3. BREACH OF CONTRACT, IMPLIED CONTRACT AND EQUITABLE CLAIMS

The circuit court dismissed Candee's breach of contract, implied contract and equitable claims based on the rationale of *G.H. Lindekugel & Sons, Inc. v. South Dakota St. Hy. C.,* 87 S.D. 32, 202 N.W.2d 125 (1972). In *Lindekugel,* the court construed SDCL 31–2–34 through 31–2–39 as a procedural remedy and not an appropriation statute that would allow payment of a judgment for breach of contract against the State of South Dakota. The court also based its decision upon Article XI, §§ 8 and 9 of the state constitution. Upon review, we believe the interpretation provided by the *Lindekugel* court is overly restrictive.

■ We reach this conclusion by first examining the plain meaning of SDCL 31–2–34 and SDCL 31–2–38. SDCL 31–2–34 provides:

The State of South Dakota may be sued and made defendant in any court in which an action is brought against the South Dakota department of transportation respecting any claim, right, or controversy arising out of the work performed, or by virtue of the provisions of any construction contract entered into by the South Dakota department of transportation.

Further, SDCL 31–2–38 provides that any successful litigant obtaining a judgment shall be paid "out of the state highway fund from all the moneys levied and collected by the state by general state taxation for state highway purposes, or appropriated for state highway purposes."

The plain meaning of "any claim, right or controversy arising out of the work performed, ...", SDCL 31–2–34, permits an action either under the terms of the contract or outside of it for work performed. This interpretation is also supported by the fact that the phrase is followed by the disjunctive phrase "or by virtue of the provisions of any construction contract...." SDCL 31–2–34. If contractors are limited to actions under the provisions of the contract, then the phrase "any claim right or controversy arising out of the work performed ..." is meaningless. In interpreting statutes, all provisions within a statute must be given effect if possible. *Hartpence v. Youth Forestry Camp,* 325 N.W.2d 292 (S.D.1982); *Matter of Silver King Mines, Permit EX–5,* 315 N.W.2d 689 (S.D.1982). We believe that this interpretation gives effect to all of the provisions of SDCL 31–2–34.

■ Even if a contractor can bring suit under SDCL 31–2–34, an appropriation is necessary to pay a judgment. Article XI, § 9 of the state constitution provides:

All taxes levied and collected for state purposes shall be paid into the state treasury. No indebtedness shall be incurred or money expended by the state, and no warrant shall be drawn upon the state treasurer except in pursuance of an appropriation for the specific purpose first made. The Legislature shall provide by suitable enactment for carrying this section into effect.

We interpret SDCL 31–2–38 as providing a continuing appropriation for damages awarded and costs assessed against the State of South Dakota as a result of an action against the state under SDCL 31–2–34. The plain meaning of SDCL 31–2–38 is that damages awarded will be paid "out of the state highway fund from all the moneys levied and collected by the state by general state taxation for state highway purposes, or appropriated for state highway purposes."

■ Our final consideration is whether our interpretation of SDCL 31–2–34 and 31–2–38 conflicts with the requirements of Article XI, § 8 of the state constitution which requires that the license, registration fees or other charges for operating a motor vehicle on the public highways and the proceeds from taxes for motor fuels used to propel motor vehicles upon public highways, "shall be used exclusively for the

maintenance, construction and supervision of highways and bridges of this state."

On prior occasions, this court has strictly construed the meaning of Article XI, § 8. In *Opinion of the Supreme Court Etc.*, 257 N.W.2d 442 (S.D.1977), the court observed:

> The history of Article XI, § 8 of our Constitution, ... clearly indicates that this is a restricted and impressed fund created by the Constitution that prevents the use of the funds described in the Article for payment of any obligation of the state other than those described in the Article.

*Id.* at 445. In *South Dakota Auto. Club, Inc. v. Volk*, 305 N.W.2d 693 (S.D.1981), the court held:

> [I]n reading the amendment to Art. XI § 8, the obvious intent of the framers and voters was to dedicate the proceeds of the taxes on fuel used by motor vehicles on the highways for the maintenance, construction, and supervision of the highways and bridges over which those motor vehicles traveled.

*Id.* at 699.

We do not believe that payment of damages for work performed on a highway construction project violates the intent of Article XI, § 8. We reverse *Lindekugel* to the extent it holds to the contrary.

### 4a. THE CIVIL RIGHTS CLAIM

Candee claims that the actions of James Myers gave rise to an action under 42 U.S.C. § 1983. Candee contends it was denied a property right without procedural and substantive due process when defendant Myers refused to allow Candee to bid on another highway construction project.

Under the Administrative Rules, before a prospective bidder may bid on state highway construction projects over $100,000.00, it must obtain a classification and maximum rating from DOT each year. A.R. S.D. 70:01:05:02. In April 1985 the prequalification committee for DOT issued a letter that prequalified Candee to bid on a maximum of $38,130,000.00 in highway construction projects.

In 1985 Candee requested the plans to bid on project 41, another highway construction project in the Black Hills. On August 12, 1985, Myers denied Candee's request for a proposal and plans on the 41 project. This decision was based on paragraph 2.3 of the Standard Specifications for Roads and Bridges, 1977 edition under which DOT reserves the right to refuse to issue a proposal if a bidder has "uncompleted work which, in the judgment of the department, might hinder or prevent the prompt completion of additional work if awarded" and in cases of "unsatisfactory performance on previous work." Myers noted that Candee had failed to meet the completion dates for projects 48 and 45, causing "inconvenience to the traveling public" and "economic loss to businesses dependent upon them."

Following the denial to furnish bidder forms, Candee requested a hearing before the highway commission. The commission found that Myers had acted correctly and upheld his decision to deny Candee bidding rights on the 41 project. This hearing and decision occurred six days before the 41 project's bid letting. Candee did not appeal from the commission's decision.

Candee claims that its prequalification to bid on highway construction contracts is a property right, and, as a result, it was entitled to a predeprivation hearing before that right could be removed. The circuit court held that the meeting before the highway commission constituted a predeprivation hearing.

It is undisputed that Candee was given a hearing before the State Highway Commission before the 41 project's bid letting. Whether or not the right to bid on a highway construction project is a constitutionally protected property right is moot because the hearing before the highway commission afforded Candee adequate due process. We express no opinion whether a § 1983 plaintiff must exhaust state court remedies or whether there exists a qualified immunity in this case.

### 4b. PUNITIVE DAMAGES

Having disposed of the claimed damages under 42 U.S.C. § 1983, no cause of action

exists upon which a claim for punitive damage may exist. We therefore affirm the trial court's dismissal of Candee's punitive damage claim.

### 5. COSTS

■■■ The circuit court entered its order taxing as costs the travel and living expenses of a Rapid City court reporter who attended the taking of depositions in North Dakota, Minnesota and California.

SDCL 15–17–4 provides:

> In all cases where a party is allowed to recover costs the clerk must also tax as a part of the judgment the allowance of such party's witnesses', interpreters', translators', officers', and printers' fees, fees for the service of process, filing fees and the necessary expense of taking depositions and procuring necessary evidence.

Although the use of a Rapid City court reporter to take depositions in other states may have been a convenience to the individual defendants, such expenses do not qualify as "necessary" and should not have been allowed as costs under SDCL 15–17–4.

■■■ The actual expense attributable to the preparation and furnishing of transcripts of depositions taken by the individual defendants was taxed as costs by the trial court. Candee claims that those costs were prematurely taxed because the depositions may be used in the actions which remain against DOT. This argument is not a compelling reason to defer the taxation of costs in this case.

### CONCLUSION

We remand this case to the circuit court for trial on the issue of additional compensation for water under the contract. The breach of contract, implied contract and equitable claims should be reconsidered in light of our decision concerning *Lindekugel.* We affirm the circuit court's determination that no action lies for additional compensation for rock excavation under the terms of the contract, and that no claim lies for breach of civil rights under 42 U.S.C. § 1983. The circuit court's decision regarding costs is modified according to our decision.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

SABERS, J., concurs in part and dissents in part.

HEEGE, Circuit Judge, for HENDERSON, J., disqualified.

SABERS, Justice (concurring in part and dissenting in part).

I concur except that I dissent on that part of issue 4 which relates to the disqualification of Candee to bid on a third highway construction project in the Black Hills, entitled project 41. The ruling on this matter by the trial court and the majority is premature. Granting summary judgment on one issue is proper only where that issue is "clearly distinct from the issues on which factual questions [remain]." *Stetler v. Fosha,* 9 Kan.App.2d 519, 521, 682 P.2d 682, 685 (1984).

Courts in other jurisdictions have found error where summary judgment was granted on an issue which depended for its resolution upon another issue involving unresolved factual questions. For example, in *Van Knight Steel Erection, Inc. v. Housing and Redev. Auth. of the City of St. Paul,* 430 N.W.2d 1 (Minn.App.1988), a contractor moved for summary judgment on its claim against a developer, seeking final payment for work on the developer's construction project. The developer claimed summary judgment was inappropriate due to a second contractor's claim against the developer for increased costs, which the developer asserted were at least partially due to defective work by the first contractor. As a consequence, the developer claimed a right of set off against the payment to the first contractor for any increased liability to the second contractor arising from defective work by the first contractor. Since the developer's liability to the second contractor was not yet determined, the developer argued that summary judgment was not proper. The trial court granted the motion for summary judgment, but was overruled by the court of appeals,

who held that summary judgment was premature since a decision on the first contractor's claim depended upon the result of the second contractor's claim. In other words, where resolution of an issue depends upon the outcome of a second issue, summary judgment cannot be granted on the first issue until the second is resolved. *See also Villa Charlotte Bronte, Inc. v. Commercial Union Ins. Co.*, 64 N.Y.2d 846, 487 N.Y.S.2d 314, 476 N.E.2d 640 (1985) (Error to enter partial summary judgment declaring that insurer was not required to defend officer of insured on defamation charge until factual questions regarding the making of the defamatory statements were resolved).

Although the reasons given by Department of Transportation Secretary Myers to deny Candee's request for a proposal and plans on project 41 appear reasonable on their face, a closer examination reveals otherwise. In fact, if Candee Construction Company wins on issue 2 and proves that the Department of Transportation imposed *unreasonable construction standards* upon Candee, any claims of "unsatisfactory performance on previous work" and failure "to meet the completion dates for projects 48 and 45, causing 'inconvenience to the travelling public' and 'economic loss to businesses dependent upon them'" could be the fault of the Department of Transportation and not the fault of Candee Construction Company. In other words, if the delay and construction problems were caused by Department of Transportation, (i.e., wrongful imposition of unreasonable construction standards,) genuine issues of material fact exist and prevent summary judgment. *Groseth Int'l, Inc. v. Tenneco, Inc.*, 410 N.W.2d 159 (S.D.1987); *Bego v. Gordon*, 407 N.W.2d 801 (S.D.1987). Therefore, any ruling on issue 4 prior to a jury verdict on issue 2, is premature.