Kenny **BAATZ** and Peggy Baatz, Plaintiffs and Appellants,

v.

**ARROW BAR** a/k/a Arrow Bar, Inc., Edmond E. Neuroth, LaVella J. Neuroth, and Jacquette J. Neuroth, Defendants and Appellees.

No. 16597.

Supreme Court of South Dakota.

Considered on Briefs Nov. 29, 1989.

Decided Feb. 28, 1990.

Rehearing Denied April 16, 1990.

Flynn Fischer, Wessington Springs, for plaintiffs and appellants.

David Alan Palmer of Strange & Palmer, P.C., Sioux Falls, for defendants and appellees.

SABERS, Justice.

Kenny and Peggy Baatz (Baatz), appeal from summary judgment dismissing Edmond, LaVella, and Jacquette Neuroth, as individual defendants in this action.

## Facts

Kenny and Peggy were seriously injured in 1982 when Roland McBride crossed the center line of a Sioux Falls street with his automobile and struck them while they were riding on a motorcycle. McBride was uninsured at the time of the accident and apparently is judgment proof.

Baatz alleges that Arrow Bar served alcoholic beverages to McBride prior to the accident while he was already intoxicated. Baatz commenced this action in 1984, claiming that Arrow Bar's negligence in serving alcoholic beverages to McBride contributed to the injuries they sustained in the accident. Baatz supports his claim against Arrow Bar with the affidavit of Jimmy Larson. Larson says he knew McBride and observed him being served alcoholic beverages in the Arrow Bar during the afternoon prior to the accident, while McBride was intoxicated. *See Baatz v. Arrow Bar*, 426 N.W.2d 298 (S.D.1988), for a more complete statement of the facts.

Edmond and LaVella Neuroth formed the Arrow Bar, Inc. in May 1980. During the next two years they contributed $50,000 to the corporation pursuant to a stock subscription agreement. The corporation purchased the Arrow Bar business in June 1980 for $155,000 with a $5,000 down payment. Edmond and LaVella executed a promissory note personally guaranteeing payment of the $150,000 balance. In 1983 the corporation obtained bank financing in the amount of $145,000 to pay off the purchase agreement. Edmond and LaVella again personally guaranteed payment of the corporate debt. Edmond is the president of the corporation, and Jacquette Neuroth serves as the manager of the business. Based on the enactment of SDCL 35–4–78 and 35–11–1 and advice of counsel, the corporation did not maintain dram shop liability insurance at the time of the injuries to Kenny and Peggy.

In 1987 the trial court entered summary judgment in favor of Arrow Bar and the individual defendants. Baatz appealed that judgment and we reversed and remanded to the trial court for trial. *Baatz, supra.* Shortly before the trial date, Edmond, La-Vella, and Jacquette moved for and obtained summary judgment dismissing them as individual defendants. Baatz appeals. We affirm.

## Summary Judgment

■■ A trial court may grant summary judgment only when there are no genuine issues of material fact. SDCL 15–6–56(c); *Bego v. Gordon*, 407 N.W.2d 801 (S.D. 1987). The moving party bears the burden of showing the absence of genuine issues of material fact. *Id.* In resisting the motion, the non-moving party must present specific facts that show a genuine issue of fact does exist. *Ruane v. Murray*, 380 N.W.2d 362 (S.D.1986). Mere allegations that are devoid of specific facts will not prevent the issuance of summary judgment. *Western Cas. & Sur. Co. v. Gridley*, 362 N.W.2d 100 (S.D.1985). If no issue of material fact exists, then any legal questions may be decided by summary judgment. *Bego, supra.* When determining whether a genuine issue of material fact exists, the evidence must be viewed most favorably to the non-moving party and reasonable doubts are to be resolved against the moving party. *Groseth Int'l, Inc. v. Tenneco, Inc.*, 410 N.W.2d 159 (S.D.1987).

### 1. Individual liability as employees.

SDCL 35–4–78 protects persons from the risk of injury or death resulting from intoxication enhanced by the particular sale of alcoholic beverages. *Baatz, supra; Walz v. City of Hudson*, 327 N.W.2d 120 (S.D. 1982). Accordingly, the statute "establishes a standard of care or conduct, a breach of which is negligence as a matter of law." *Walz, supra* at 123. That standard of care may be breached either by the liquor licensee or an employee of the licensee. *Selchert v. Lien*, 371 N.W.2d 791 (S.D.1985).

■ Neuroths claim there is no evidence that they individually violated the standard of care created by SDCL 35–4–78. They claim the licensee is the corporation, Arrow Bar, Inc., leaving them liable only if one of them, as an employee, served alcoholic beverages to McBride while he was intoxicated. They claim the record is void of any

evidence indicating that any one of them served McBride on the day of the accident.

Baatz argues that this court's decision in *Selchert, supra,* allowed a cause of action against both the liquor licensee and the licensee's employees. Baatz claims that each of the Neuroths admitted in deposition to being an employee of the corporation. Consequently, under his reasoning, a cause of action may be brought against the Neuroths in their individual capacities. However, Baatz reads the decision in *Selchert* too broadly. That decision was never intended to allow a cause of action against *any* employee of a liquor licensee when the licensee had violated SDCL 35-4-78. While a cause of action may be brought against a licensee's employee, it must be established that that employee violated the standard of care established by the statute. Employee status alone is insufficient to sustain a cause of action. Baatz failed to offer evidence that any of the Neuroths personally served McBride on the day of the accident.

■ Baatz also argues that Jacquette Neuroth, as manager of the bar, is liable under the doctrine of respondeat superior. Under this doctrine, an employer may be liable for the conduct of an employee. *Bucholz v. City of Sioux Falls,* 77 S.D. 322, 91 N.W.2d 606 (1958). However, in this case, Jacquette Neuroth is not the employer. The employer of the individuals who may have served McBride is the corporation, Arrow Bar, Inc. Therefore, Baatz' argument misapplies the doctrine of respondeat superior.

### 2. Individual liability by piercing the corporate veil.

■ Baatz claims that even if Arrow Bar, Inc. is the licensee, the corporate veil should be pierced, leaving the Neuroths, as the shareholders of the corporation, individually liable. A corporation shall be considered a separate legal entity until there is *sufficient reason* to the contrary. *Mobridge Community Indus., Inc. v. Toure, Ltd.,* 273 N.W.2d 128 (S.D.1978); *cf. Hamaker v. Kenwel–Jackson Mach., Inc.,* 387 N.W.2d 515 (S.D.1986). When continued

recognition of a corporation as a separate legal entity would "produce injustices and inequitable consequences," then a court has sufficient reason to pierce the corporate veil. *Farmers Feed & Seed, Inc. v. Magnum Enter., Inc.,* 344 N.W.2d 699, 701 (S.D.1984). Factors that indicate injustices and inequitable consequences and allow a court to pierce the corporate veil are:

1) fraudulent representation by corporation directors;

2) undercapitalization;

3) failure to observe corporate formalities;

4) absence of corporate records;

5) payment by the corporation of individual obligations; or

6) use of the corporation to promote fraud, injustice, or illegalities.

*Id.* When the court deems it appropriate to pierce the corporate veil, the corporation and its stockholders will be treated identically. *Mobridge, supra.*

■ Baatz advances several arguments to support his claim that the corporate veil of Arrow Bar, Inc. should be pierced, but fails to support them with facts, or misconstrues the facts.

First, Baatz claims that since Edmond and LaVella personally guaranteed corporate obligations, they should also be personally liable to Baatz. However, the personal guarantee of a loan is a contractual agreement and cannot be enlarged to impose tort liability. Moreover, the personal guarantee creates individual liability for a corporate obligation, the opposite of factor 5), above. As such, it supports, rather than detracts from, recognition of the corporate entity.

■ Baatz also argues that the corporation is simply the alter ego of the Neuroths, and, in accord with *Loving Saviour Church v. United States,* 556 F.Supp. 688 (D.S.D.1983), *aff'd,* 728 F.2d 1085 (8th Cir. 1984), the corporate veil should be pierced. Baatz' discussion of the law is adequate, but he fails to present evidence that would support a decision in his favor in accordance with that law. When an individual treats a corporation "as an instrumentality

through which he [is] conducting his personal business," a court may disregard the corporate entity. *Larson v. Western Underwriters, Inc.*, 77 S.D. 157, 163, 87 N.W.2d 883, 886 (1958). Baatz fails to demonstrate how the Neuroths were transacting personal business through the corporation. In fact, the evidence indicates the Neuroths treated the corporation separately from their individual affairs.

 Baatz next argues that the corporation is undercapitalized. Shareholders must equip a corporation with a reasonable amount of capital for the nature of the business involved. *See Curtis v. Feurhelm*, 335 N.W.2d 575 (S.D.1983). Baatz claims the corporation was started with only $5,000 in borrowed capital, but does not explain how that amount failed to equip the corporation with a reasonable amount of capital. In addition, Baatz fails to consider the personal guarantees to pay off the purchase contract in the amount of $150,000, and the $50,000 stock subscription agreement. There simply is no evidence that the corporation's capital in whatever amount was inadequate for the operation of the business. Normally questions relating to individual shareholder liability resulting from corporate undercapitalization should not be reached until the primary question of corporate liability is determined. Questions depending in part upon other determinations are not normally ready for summary judgment. *See Van Knight Steel Erection, Inc. v. Housing and Redev. Auth. of the City of St. Paul*, 430 N.W.2d 1 (Minn.Ct.App.1988); *see also Candee Constr. Co., Inc. v. South Dakota Dep't of Transp.*, 447 N.W.2d 339, 346 (S.D.1989) (Sabers, J., dissenting). However, simply asserting that the corporation is undercapitalized does not make it so. Without some evidence of the inadequacy of the capital, Baatz fails to present specific facts demonstrating a genuine issue of material fact. *Ruane, supra.*

 Finally, Baatz argues that Arrow Bar, Inc. failed to observe corporate formalities because none of the business' signs or advertising indicated that the business was a corporation. Baatz cites SDCL

47–2–36 as requiring the name of any corporation to contain the word corporation, company, incorporated, or limited, or an abbreviation for such a word. In spite of Baatz' contentions, the corporation is in compliance with the statute because its corporate name—Arrow Bar, Inc.—includes the abbreviation of the word incorporated. Furthermore, the "mere failure upon occasion to follow all the forms prescribed by law for the conduct of corporate activities will not justify" disregarding the corporate entity. *Larson, supra,* 77 S.D. at 164, 87 N.W.2d at 887 (quoting *P.S. & A. Realties, Inc. v. Lodge Gate Forest, Inc.*, 205 Misc. 245, 254, 127 N.Y.S.2d 315, 324 (1954)). Even if the corporation is improperly using its name, that alone is not a sufficient reason to pierce the corporate veil. This is especially so where, as here, there is no relationship between the claimed defect and the resulting harm.

In addition, the record is void of any evidence which would support imposition of individual liability by piercing the corporate veil under any of the other factors listed above in 1), 4) or 6).

In summary, Baatz fails to present specific facts that would allow the trial court to find the existence of a genuine issue of material fact. There is no indication that any of the Neuroths personally served an alcoholic beverage to McBride on the day of the accident. Nor is there any evidence indicating that the Neuroths treated the corporation in any way that would produce the injustices and inequitable consequences necessary to justify piercing the corporate veil. In fact, the only evidence offered is otherwise. Therefore, we affirm summary judgment dismissing the Neuroths as individual defendants.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

This corporation has no separate existence. It is the instrumentality of three shareholders, officers, and employees. Here, the corporate fiction should be dis-

regarded. The factors of *Curtis v. Feurhelm,* 335 N.W.2d 575 (S.D.1983) were disregarded by the trial court.

A corporate shield was here created to escape the holding of this Court relating to an individual's liability in a dram shop action. Thus, our holdings in *Baatz v. Arrow Bar,* 426 N.W.2d 298 (S.D.1988), *Selchert v. Lien,* 371 N.W.2d 791 (S.D.1985) and *Walz v. City of Hudson,* 327 N.W.2d 120 (S.D. 1982) have been totally circumvented.

As a result of this holding, the message is now clear: Incorporate, mortgage the assets of a liquor corporation to your friendly banker, and proceed with carefree entrepreneuring.

In both of these briefs, the parties argue, all in all, about the facts. One may reasonably conclude that there exists questions of fact. *See, Deuchar v. Foland Ranch, Inc.,* 410 N.W.2d 177, 181 (S.D.1987) holding that: "Issues of negligence or related matters are ordinarily not susceptible of summary adjudication."

Baatzes had their case thrown out of court when many facts were in dispute. I am reminded of the old lawyer, before a jury, who expressed his woe of corporations. He cried out to the jury: "A corporation haveth no soul and its hind end you can kicketh not."

## FACTS JUSTIFYING JURY TRIAL

Peggy Baatz, a young mother, lost her left leg; she wears an artificial limb; Kenny Baatz, a young father, has had most of his left foot amputated; he has been unable to work since this tragic accident. Peggy uses a cane. Kenny uses crutches. Years have gone by since they were injured and their lives have been torn asunder.

Uninsured motorist was drunk, and had a reputation of being a habitual drunkard; Arrow Bar had a reputation of serving intoxicated persons. (Supported by depositions on file). An eyewitness saw uninsured motorist in an extremely intoxicated condition, shortly before the accident, being served by Arrow Bar. Therefore, a question of fact exists as to liability being violated under SDCL 35–4–78(2). This evidence must be viewed most favorably to the nonmoving party. *American Indian Agr. Credit Consortium, Inc. v. Ft. Pierre Livestock, Inc.,* 379 N.W.2d 318 (S.D.1985). A police officer testified, by deposition, that uninsured motorist was in a drunken stupor while at the Arrow Bar.

Are the Neuroths subject to personal liability? It is undisputed, by the record, that the dismissed defendants (Neuroths) are immediate family members and stockholders of Arrow Bar. By pleadings, at settled record 197, it is expressed that the dismissed defendants are employees of Arrow Bar. Seller of the Arrow Bar would not accept Arrow Bar, Inc., as buyer. Seller insisted that the individual incorporators, in their individual capacity be equally responsible for the selling price. Thus, the individuals are the real party in interest and the corporate entity, Arrow Bar, Inc., is being used to justify any wrongs perpetrated by the incorporators in their individual capacity. Conclusion: Fraud is perpetrated upon the public. At a deposition of Edmond Neuroth (filed in this record), this "President" of "the corporation" was asked why the Neuroth family incorporated. His answer: "Upon advice of counsel, as a shield against individual liability." The corporation was undercapitalized (Neuroths borrowed $5,000 in capital). For authorities establishing undercapitalization as an indication that a legitimate, separate corporate entity is not maintained, *see,* Vol. 1 W. Fletcher, Cyclopedia of Corporations, section 44.1, at 528 (rev. ed. 1983); *Curtis v. Feurhelm,* 335 N.W.2d 575 (S.D.1983); *Anderson v. Abbott,* 321 U.S. 349, 362, 64 S.Ct. 531, 538, 88 L.Ed. 793 (1944). In *Loving Saviour Church,* cited by the majority, the Eighth Circuit Court of Appeals reflected upon this Court's stance in casting aside corporate veils, expressing that this Court decides each case *sui generis* with the outcome in accordance with the underlying facts of each case. In *Loving Saviour Church,* it was held that a chiropractor could not use a church to escape income taxes; here, a corporation conceived in undercapitalization as "a shield," in the words of "the President," should not be used as an artifice to avoid the intent of

SDCL 35–4–78(2). In *Curtis,* cited by the majority opinion, we held that corporate entity should be disregarded if use of the corporation was employed to promote fraud, injustice, and illegality.

Clearly, it appears a question arises as to whether there is a fiction established to escape our previous holdings and the intent of our State Legislature. Truly, there are fact questions for a jury to determine: (1) negligence or no negligence of the defendants and (2) did the Neuroth family falsely establish a corporation to shield themselves from individual liability, i.e., do facts in this scenario exist to pierce the corporate veil?

## CONCLUSION

Plaintiffs are entitled to a jury trial under the State Constitution to have a jury resolve these two issues. The South Dakota Constitution, art. VI, § 6, begins with these words: "The right of trial by jury shall remain inviolate and shall extend to all cases at law without regard to the amount in controversy, ...." The majority writer, Justice Sabers, wrote in *Klatt v. Continental Insurance Company,* 409 N.W.2d 366, 368 (S.D.1987), for the majority and expressed: "Therefore, we affirm only if there are no genuine issues of material fact and the legal questions have been correctly decided." Genuine issues of material fact on negligence should be resolved by the jury and there are questions concerning the legality of this corporation which have not been, in my opinion, correctly decided.

Therefore, I respectfully dissent.