**Daniel BOLLWERK and Helen Bollwerk, Plaintiffs,**

v.

**The SUSQUEHANNA CORPORATION, Defendant.**

**No. Civ. 91–5142.**

United States District Court, D. South Dakota, W.D.

Jan. 27, 1993.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

BATTEY, District Judge.

Pending is defendant's motion for summary judgment (Docket # 26); defendant's motion for an order to determine the sufficiency of plaintiffs' responses to defendant's first request for admissions (Docket # 30); plaintiffs' motion to compel production of documents and for an in camera review of documents (Docket # 35); and plaintiffs' motion to require defendant to submit a Vaughn Index (Docket # 38). Upon review of the record the Court finds that summary judgment for the defendant is in order; therefore, the remaining pending motions are dismissed as moot.

### FACTS

Daniel Bollwerk (Bollwerk) and his wife filed this fraud action against the Susquehanna Corporation (Susquehanna) and two of its subsidiaries, Susquehanna Western Incorporated (SWI) and Mine Development, Inc. (MDI).[1] Plaintiffs claim that one or more of the defendants fraudulently concealed medical information from Bollwerk during the time he was employed at the uranium processing mill in Edgemont, South Dakota. Defendant Susquehanna filed a motion for summary judgment asserting that Susquehanna cannot be found liable for the alleged acts of its subsidiaries under the facts of this case.

The factual allegations of plaintiffs' claim were discussed in the Court's order of April 23, 1992, and are not germane to the issue presented in defendant's motion for summary judgment; therefore, they need not be repeated here. However, a recitation of the facts surrounding the corporate structure of the initial three defendants is required.

Kenneth E. Barker, Quinn, Eiesland, Day & Barker, Belle Fourche, SD, for plaintiffs.

Donald R. Shultz, Lynn, Jackson, Shultz & Lebrun, Rapid City, SD, for defendant.

■ Bollwerk was employed by SWI and of MDI,[2] but he was not at any time em-

---

1. The Susquehanna Corporation is the only remaining defendant in this action. SWI and MDI were dismissed by the Court's order dated April 23, 1992 (Docket # 19).

2. It is undisputed that Bollwerk was employed by SWI at the Edgemont uranium mine. Defendant claims that Bollwerk was never employed by MDI; however, plaintiffs dispute this fact.

ployed by Susquehanna.[3] SWI and MDI were at one time wholly owned subsidiaries of Susquehanna. Both SWI and MDI were engaged in the mining and processing of uranium ore. The companies owned and operated several different mills, including the one located at Edgemont, South Dakota.

In 1951, SWI was incorporated under the laws of Wisconsin as Fond du Lac Motor Coach Lines, Inc. This name was changed to Fremont Minerals, Inc. on April 18, 1957, and again to its present name on April 7, 1959. During its corporate existence, SWI kept separate financial records from those of Susquehanna and did not mingle its assets with Susquehanna's assets. Also, SWI kept corporate minutes on a regular basis, separate from the minutes of Susquehanna. *See* Affidavit of Peter H. Boch in support of defendant the Susquehanna Corporation's motion for summary judgment (Boch Affidavit, ¶ 7(a), Docket # 27).

SWI was sold to Solution Engineering, Inc. (SEI), in 1975 for $9,755,000 and was legally dissolved in 1978. At the time of the sale to SEI, SWI had a stated book value of $4,377,508. *See* Boch Affidavit, ¶ 7(b). No proceeds from the dissolution of SWI were received by Susquehanna as Susquehanna did not own any of SWI's stock at the time of its dissolution. *See* Boch Affidavit, ¶ 7(b), Docket # 27).

MDI was incorporated under the laws of Wisconsin and was dissolved in March 1976. Prior to its dissolution, MDI sold its assets in Edgemont, South Dakota, to the Tennessee Valley Authority (TVA). *See* Boch Affidavit, ¶ 7(c), Docket # 27, and Exhibits E and F, attached to Boch Affidavit. MDI had no substantial assets at the time it was dissolved and transferred no assets to Susquehanna as part of its dissolution. *See* Boch Affidavit, ¶ 7(d).

During MDI's corporate existence, MDI kept separate financial records from those of Susquehanna and did not mingle its assets with Susquehanna's assets. *See* Boch Affidavit, ¶ 7(d). MDI also kept corporate minutes in the regular course of business. *Id.*

Susquehanna was organized under Delaware law in October 1953, as a successor, through reorganization, of the Chicago North Shore and Milwaukee Railway Company. Susquehanna was at one time a diversified company engaged in a variety of businesses, including the mining and processing or uranium ore, through its wholly owned subsidiaries, SWI and MDI. *See* plaintiff's exhibit 2, at p. 1 attached to Plaintiff's Statement of Material Facts (plaintiff's exhibit), Docket # 43.

For the past several years Susquehanna has been a holding company and engaged in no active business. *See* Boch Affidavit, ¶ 3. At present, Susquehanna has a sole officer and director and has only one paid employee, who is a watchman of a closed manufacturing facility formerly used in the

Plaintiffs provide certain documents which reference Bollwerk as an employee of MDI. First, Bollwerk's name is contained on a MDI employment authorization document dated April 18, 1960. *See* plaintiffs' exhibit 2A. Second, one of Bollwerk's medical reports from Dr. Robert Bell, references MDI. *See* plaintiffs' exhibit 5A. Defendant asserts that these documents do not raise a genuine issue of fact as to whether Bollwerk was employed by MDI. Viewing the facts most favorable to the non-moving party, plaintiffs have raised a genuine issue as to whether Bollwerk was an employee of MDI. However, this issue does not alter the Court's conclusion that summary judgment for the defendant must be granted. Even assuming Bollwerk was employed by MDI, MDI as discussed below was, no less than SWI, a fully operational corporation that kept separate financial records and observed corporate formalities; therefore, there is no basis for holding MDI's parent corporation liable for its alleged fraudulent acts.

3. Plaintiffs assert that Bollwerk "may" have been an employee not only of SWI and MDI, but also of Susquehanna. The only evidence plaintiffs produce to support their contention that Bollwerk was an employee of Susquehanna is a statement from Susquehanna's annual report that stated "[t]he Susquehanna Corporation is a diversified company which, at December 1974, employed approximately 3200 persons. Its business operations are conducted principally through six operating subsidiaries." Plaintiffs' Exhibit 33, p. 2. Plaintiffs contend that through this statement alone, Susquehanna recognized and represented that Daniel Bollwerk was an employee of Susquehanna. The Court finds that this evidence is insufficient to create a factual issue as to whether Bollwerk was ever employed by Susquehanna.

manufacture of mineral wool insulation. *See* Boch Affidavit, ¶ 6. Neither Susquehanna's officer nor its employee had any knowledge of SWI or MDI prior to the instigation of this lawsuit. *See* Boch Affidavit, ¶ 6.

## SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if he can "show that there is no genuine issue as to any material fact and that [he] is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting, Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458, 488 (1962). In determining whether summary judgment should issue, the facts and inferences from those facts are viewed in the light most favorable to the nonmoving party and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–90, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. In determining whether a genuine issue of material facts exists, the Court views the evidence presented based upon which party has the burden of proof under the underlying substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). The Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). The nonmoving party "must do more than

show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356, and "[w]here the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.*

The trilogy of *Celotex, Anderson,* and *Matsushita* provide the Court with a methodology in analyzing defendants' motion. Under this trilogy, it is incumbent upon the plaintiffs, based upon the showing set forth by defendant, to come forward with specific facts demonstrating that there is a genuine issue in order to counter defendant's summary judgment motion. *Cf. Women's Health Center of W. County v. Webster*, 871 F.2d 1377, 1383 n. 9 (8th Cir.1989). Bearing these standards in mind, the Court finds plaintiffs have not demonstrated that there is a genuine issue for trial; therefore, summary judgment for defendant is appropriate.

## DISCUSSION

The issue before the Court is whether Susquehanna as a parent corporation can be held liable for the alleged fraudulent acts of SWI or MDI who were at the relevant time frame wholly owned subsidiaries of Susquehanna.

Defendant asserts that plaintiffs have produced no evidence that would support a finding of liability against Susquehanna. Plaintiffs, on the other hand, contend that Susquehanna is liable for the acts of its subsidiaries because SWI and MDI were mere "instrumentalities" or "alter egos" of Susquehanna; therefore, their corporate identity should be ignored. Further, plaintiffs contend that Susquehanna may be liable as a "successor corporation" to either SWI or MDI.[4]

### Choice of Law

■ Initially, the Court notes that the parties are in disagreement as to what law applies to this action. Generally, because this is a diversity action it is the Court's

---

**4.** Plaintiffs do not allege these specific theories of liability in their complaint. Rather plaintiffs have raised these theories in their brief in oppo-

sition to the motion to dismiss (Docket # 14) and their brief in opposition to the summary judgment motion (Docket # 44).

duty to ascertain the law of the forum state, South Dakota, and apply it to the facts of the case. *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988). However, when there is a disagreement the Court must apply the choice of law rules of the state in which it sits. *Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1320 (8th Cir.1991) (citations omitted). An extended discussion of this issue is not required because summary judgment is warranted under either South Dakota or Wisconsin law.[5] Nevertheless, the Court will generally discuss the parties' arguments on this issue and the application of South Dakota law.

Defendant contends that the issue of piercing SWI and MDI's corporate veil is governed by the law of Wisconsin, the state of SWI and MDI's incorporation.[6] Defendant relies in part on this Court's April 23, 1992 order dismissing SWI and MDI from the case. (Docket # 19) wherein the Court, under Rule 17 of the Federal Rules of Civil Procedure, applied Wisconsin law to determine the capacity of SWI and MDI to be sued. Defendant presumes that because the Court applied Wisconsin law in determining the capacity of SWI and MDI to be sued, that it must apply Wisconsin law to determine whether, under the facts of this case, plaintiffs can pierce SWI and MDI's corporate veil. This contention is without merit. The question of whether a corporation has the capacity to sue or be sued is a very narrow question while the issue in the summary judgment motion, whether the Court should pierce the corporate veil, is much broader in scope and not directly related to the question of capacity.

Rule 17 requires that the law of the state of incorporation be applied to determine if a defendant has the "capacity" to be sued. Fed.R.Civ.P. 17(b). *See, e.g., Sun Pipe Line Co. v. Altes*, 511 F.2d 280, 283 (8th Cir.1975). Capacity is the ability of a particular individual or entity to use, or to be brought into, the courts of a forum. *See, e.g., Moore v. Matthew's Book Co.*, 597 F.2d 645, 647 (8th Cir.1979). It has no direct correlation to the conducting of business, the existence of an enforceable right, interest, cause of action, claim or defense, or whether a party is a real party in interest. *Johnson v. Helicopter & Airplane Services Corp.*, 404 F.Supp. 726, 729 (D.Md.1975) (citations omitted).

In this instance, there is no question but that Susquehanna has the capacity to be sued; the question is whether plaintiffs have an enforceable right against Susquehanna, a Delaware corporation. The Court can see virtually no relation of Wisconsin to the present issue. The Court is concerned with Susquehanna's alleged liability, not SWI or MDI's, who have long been dismissed from this lawsuit. Susquehanna is a Delaware corporation and not associated in any way with the state of Wisconsin. On the other hand, Bollwerk lived and worked in South Dakota, the alleged injury occurred in South Dakota, the alleged acts of fraud occurred in South Dakota, and MDI and SWI were authorized to do business in South Dakota at the time of the alleged injury. The state with the "most significant relationship" to the controversy is clearly South Dakota. *Chambers v. Dakotah Charter, Inc.*, 488 N.W.2d 63 (S.D.1992) (applying "most significant rela-

---

5. *See, e.g., Consumer's Co-op. v. Olsen*, 142 Wis.2d 465, 419 N.W.2d 211 (1988) (evidence was insufficient to warrant piercing corporate veil, when only two formal corporate meetings were held; majority shareholder infused considerable capital; informal corporate meetings were held and financial transactions were informally approved by the board of directors).

6. Defendant cites *Husky Spray Serv., Inc. v. Patzer*, 471 N.W.2d 146, 155 (S.D.1991) in support of its contention that South Dakota steadfastly follows the purported rule that the issue of piercing the corporate veil is governed by the

law of the state of incorporation. Defendant's citation to *Husky* is misleading. *Husky* was a contract action in which the buyer of an airplane brought a breach of warranty action against the seller. The South Dakota Supreme Court applied North Dakota law to a North Dakota corporation in accordance with a choice of law provision contained in the contract not pursuant to analysis of which law should apply under choice of law rules. The authority cited by defendant in its brief is inapposite and does not support its contention that Wisconsin law should apply to this issue.

tionship" test to govern tort conflicts). Therefore, we apply South Dakota law.

Piercing the Corporate Veil

█ As a general rule, a person harmed by the conduct of a corporation or one of its employees can look only to that corporation or the employee individually, for recovery. *Radaszewski v. Telecom,* 981 F.2d 305, 306 (8th Cir.1992), applying Missouri law. The individual shareholders, including a parent corporation, are not responsible. *Id.* There are exceptions to this general rule which allow a plaintiff to "pierce the corporate veil" and hold a parent company liable for the acts of its subsidiary. One such exception is the "alter ego" or "instrumentality" exception. *See, e.g., Taggart v. Ford Motor Credit Co.,* 462 N.W.2d 493 (S.D.1990); *Baatz v. Arrow Bar,* 452 N.W.2d 138 (S.D.1990). Under the alter ego exception, a plaintiff may disregard the corporate structure if the subsidiary is acting as a "mere instrumentality" of the parent corporation.

█ "Mere identification of a subsidiary without more information is insufficient to reach the conclusion that the subsidiary is the alter ego of the parent." *Mid–Continent Broadcasting Co. v. Ava Corp.,* 329 N.W.2d 378, 381 (S.D.1983). Plaintiffs must show something more than simply a parent-subsidiary relationship. Under South Dakota law, a corporation shall be considered a separate legal entity until there is *sufficient reason* to the contrary. *Baatz,* 452 N.W.2d at 141, citing *Mobridge Community Indus., Inc. v. Toure, Ltd.,* 273 N.W.2d 128 (S.D.1978). "When continued recognition of a corporation as a separate legal entity would 'produce injustices and inequitable consequences,' then a court has sufficient reason to pierce the corporate veil." *Baatz,* 452 N.W.2d at 141, quoting *Farmers Feed & Seed, Inc. v. Magnum Enter., Inc.,* 344 N.W.2d 699, 701 (S.D. 1984).

The *Baatz* court listed several facts that may demonstrate injustices and inequitable consequences which would allow a court to pierce the corporate veil:

1. fraudulent representation by corporation directors;
2. undercapitalization;
3. failure to observe corporate formalities
4. absence of corporate records;
5. payment by the corporation of individual obligations; or
6. use of the corporation to promote fraud, injustice, or illegalities.

*Baatz,* 452 N.W.2d at 141 (citing *Mobridge,* 273 N.W.2d 128).

The South Dakota Supreme Court has held that a court should pierce the corporate veil only upon the strongest evidence of the factors outlined in *Mobridge. Farmers Feed & Seed v. Magnum Enterprises,* 344 N.W.2d 699, 702 (S.D.1984).

With these principles in mind, the Court has carefully examined the record and concludes that SWI and MDI were not mere instrumentalities of Susquehanna, rather they were legitimate independent corporate entities. Therefore, the Court finds no basis in which to pierce SWI or MDI's corporate veil to impose liability on the parent corporation, Susquehanna.

There is no evidence in the record that would indicate fraudulent representation by any of the corporate directors. Further, there is no evidence that either SWI or MDI was used to promote fraud, injustice, or illegalities. Rather, the record as a whole shows that although Susquehanna as a parent corporation, asserted some degree of control over both SWI and MDI,[7] these subsidiaries were nevertheless fully operational, independent corporations.

Both SWI and MDI kept independent financial records, separate from Susquehanna's financial records. Further, both SWI and MDI observed corporate formalities by

---

7. Susquehanna and SWI and MDI shared some common directors and officers. Also, Susquehanna asserted some control over SWI and MDI's financial decisions. Clearly, Susquehanna was interested in the business affairs of SWI and MDI. This is not surprising nor unusual in a parent-subsidiary relationship. Nor are these facts sufficient to pierce the corporate veil.

holding regular board meetings and keeping corporate minutes.

Moreover, there is no evidence that either SWI or MDI was undercapitalized. Plaintiff asserts that SWI may have been undercapitalized because it suffered significant financial problems in the early 1970s. "[S]imply asserting that the corporation is undercapitalized does not make it so. Without some evidence of the inadequacy of the capital, [Bollwerk] fails to present specific facts demonstrating a genuine issue of material fact." *Baatz*, 452 N.W.2d at 142. The evidence at most shows that SWI experienced some significant business difficulties in 1972, some twenty years after SWI was originally incorporated. Simply identifying evidence of financial problems is insufficient to show that SWI was undercapitalized. Moreover, whether or not SWI suffered business difficulties, it is undisputed that SWI was sold for almost $10,000,000 in 1975, to an independent corporation. This fact negates plaintiffs' assertion that SWI was undercapitalized.

In short, the Court finds that plaintiffs have not met their burden under the *Celotex* trilogy; they have failed to bring forth facts that show there is a genuine issue of material fact.

Successor Corporate Liability

■ Plaintiffs have hinted that the theory of "successor corporate liability" may apply to this case. Plaintiffs did not allege this theory in their complaint. Rather they raise this theory in their brief in opposition to Susquehanna's motion to dismiss. (Docket # 15 at 13). The Court understands plaintiffs' argument to be that the assets of the dissolved corporations, SWI and MDI, were transferred or absorbed by Susquehanna prior to the commencement of this suit; therefore, Susquehanna is a successor corporation and liable for the acts of SWI and MDI. Plaintiffs cite no legal authority supporting this theory nor have they even seen fit to allege this theory, or any facts supporting it, in their complaint. Consequently, plaintiffs have raised no genuine issue of fact to preclude summary judgment on this issue.

■ As a general rule, there is no successor liability for a purchasing corporation when the acquisition is a purchase of assets. *Groseth Intern., Inc. v. Tenneco, Inc.*, 410 N.W.2d 159, 169 (S.D.1987). There are four recognized exceptions:

(1) When the purchasing corporation expressly or impliedly agrees to assume the selling corporation's liability;

(2) When the transaction amounts to a consolidation or merger of the purchaser and seller corporations;

(3) When the purchaser corporation is merely a continuation of the seller corporation; or

(4) When the transaction is entered into fraudulently to escape liability for such obligations.

*Id.* (citations omitted). None of these exceptions apply to the instant case because Susquehanna was not the successor corporation of either SWI or MDI.

■ SWI was sold by Susquehanna to an independent corporation SEI in 1975 for almost $10,000,000. SWI filed its Articles of Dissolution in 1978. Susquehanna did not own SWI at the time of its dissolution nor did it receive any of SWI assets upon dissolution; therefore, Susquehanna was not the successor corporation of SWI.

MDI was dissolved in March 1976. MDI transferred no assets to Susquehanna as part of its dissolution. *See* Boch Affidavit ¶ 7(d). Plaintiffs dispute this fact and allege that according to the Articles of Dissolution "all the remaining property and assets of the corporation have been distributed among its shareholder in accordance with the respective rights and interests." Plaintiffs assert that Susquehanna being the only shareholder received all the assets of MDI. However, Boch's affidavit states that MDI sold all of its assets in Edgemont, South Dakota, to TVA prior to its dissolution and had no substantial assets at the time it was dissolved. Plaintiffs have come forward with no evidence to dispute this fact. Accordingly, plaintiffs' argument that Susquehanna can be held liable as a successor corporation of MDI is without merit.

For the above reasons it is

ORDERED that defendant's motion for summary judgment (Docket # 26) is GRANTED. Final judgment shall be issued in favor of The Susquehanna Corporation. Costs shall be assessed to the plaintiffs.

IT IS FURTHER ORDERED that defendant's motion for an order to determine the sufficiency of plaintiffs' responses to defendant's first request for admissions (Docket # 30) is DISMISSED as MOOT.

IT IS FURTHER ORDERED that plaintiffs' motion to compel production of documents and for an in camera review of documents (Docket # 35); and plaintiffs' motion to require defendant to submit a Vaughn Index (Docket # 38) is DISMISSED as MOOT.